**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ADELE VARGA, Individually and On Behalf
of All Others Similarly Situated,

       Plaintiff,

v.

GENERAL ELECTRIC COMPANY and
JEFFREY ROBERT IMMELT,

       Defendants.

Case No. 1:18-cv-1449 (GLS/DJS)

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS COMPLAINT

Andrew C. Rose (Bar Roll No. 102473)
NIXON PEABODY LLP
677 Broadway, 10th Floor
Albany, New York 12207
(518) 427-2650
acrose@nixonpeabody.com

James O. Fleckner, admitted *pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jfleckner@goodwinlaw.com

Jaime A. Santos, admitted *pro hac vice*
GOODWIN PROCTER LLP
901 New York Avenue
Washington, D.C. 20001
(202) 346-4000

Dated: April 8, 2019

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

MOTION TO DISMISS STANDARD..................................................................................5

ARGUMENT .......................................................................................................................5

I.  Plaintiff's Complaint Is Barred by *Res Judicata*. .................................................5

II.  Plaintiff's Claims Are Time-Barred.........................................................................9

III.  Plaintiff's Claims All Fail Because Defendants Lacked Fiduciary Authority over Investment Decision-Making. ................................................................................10

    A.  Mr. Immelt's Alleged Power to Amend the Plan Document Did Not Make Him a Fiduciary with Respect to Investment Decision-Making. .............................11

    B.  GE's Authority To Amend the Plan Document and Role as Plan Administrator Provides GE with No Discretionary Authority over Investment Decision-Making......................................................................................................12

IV.  Plaintiff's Loyalty Claim (Count II) Fails as a Matter of Law. ............................14

V.  Count I Fails To State a Claim for Breach of the Duty of Prudence. ...................15

    A.  Plaintiff Fails To Plausibly Allege that Defendants Knew GE's Insurance Subsidiaries Under-Reserved Their Long-Term Care Liabilities............................16

    B.  The Complaint Does Not Satisfy the Pleading Standard Set Forth by the Supreme Court in *Fifth Third v. Dudenhoeffer* and *Amgen v. Harris*. ......................20

CONCLUSION...................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agway, Inc., Emps.' 401(k) Thrift Inv. Plan v. Magnuson*,
  2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006) ...........................................................10, 11, 13

*Allen v. Bank of Am. Corp.*,
  2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016), *aff'd*, 895 F.3d 214 (2d Cir. 2018) ...............12

*AmBase Corp. v. City Investing Co. Liquidating Tr.*,
  326 F.3d 63 (2d Cir. 2003)...................................................................................................6

*Amgen Inc. v. Harris*,
  136 S. Ct. 758 (2016)..............................................................................................2, 22, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................5

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011)..................................................................................15

*Bekker v. Neuberger Berman Group LLC*,
  2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018)......................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S 544 (2007)........................................................................................................5, 19

*Bell v. Pfizer, Inc.*,
  626 F.3d 66 (2d Cir. 2010)................................................................................................10

*Brown Media Corp. v. K&L Gates, LLP*,
  854 F.3d 150 (2d Cir. 2017)................................................................................................5

*Burgess v. Citigroup Inc.*,
  624 F. App'x 6 (2d Cir. 2015) ..........................................................................................7, 8

*Cameron v. Church*,
  253 F. Supp. 2d 611 (S.D.N.Y. 2003)..................................................................................8

*Cerasoli v. Xomed, Inc.*,
  47 F. Supp. 2d 401 (W.D.N.Y. 1999)..................................................................................13

*In re CIT Grp., Inc. Sec. Litig.*,
  349 F. Supp. 2d 685 (S.D.N.Y. 2004)............................................................................. 18-19

*In re Citigroup ERISA Litig.*,
   662 F.3d 128 (2d Cir. 2011).............................................................................1, 14

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015)...........................................................17, 18

*Coulter v. Morgan Stanley & Co.*,
   753 F.3d 361 (2d Cir. 2014)................................................................................10
   936 F. Supp. 2d 306 (S.D.N.Y. 2013)...............................................................14

*Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*,
   945 F.2d 1226 (2d Cir. 1991)........................................................................17, 18

*In re DeRogatis*,
   904 F.3d 174 (2d Cir. 2018)..............................................................................10

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010)................................................................................3

*Fentress v. Exxon Mobil Corp.*,
   2019 WL 426147 (S.D. Tex. Feb. 4, 2019) ...............................................21, 24

*Fifth Third Bancorp. v. Dudenhoeffer*,
   573 U.S. 409 (2014)............................................................. 2, 15, 16, 19-20, 25

*Flanigan v. Gen. Elec. Co.*,
   242 F.3d 78 (2d Cir. 2001).................................................................................12

*Fleming v. Fid. Mgmt. Tr. Co.*,
   2017 WL 4225624 (D. Mass. Sept. 22, 2017) ..................................................11

*Gannon v. NYSA-ILA Pension Tr. Fund & Plan*,
   2011 WL 868713 (S.D.N.Y. Mar. 11, 2011) ...................................................11

*Graham v. Fearon*,
   2017 WL 1113358 (N.D. Ohio Mar. 24, 2017), *aff'd*, 721 F. App'x 429 (6th Cir. 2018) ......21

*Hess v. Am. Physicans Capital, Inc.*,
   2005 WL 459638 (W.D. Mich. Jan. 11, 2005) .................................................17

*Hozier v. Midwest Fasteners, Inc.*,
   908 F.2d 1155 (3d Cir. 1990).............................................................................11

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)...........................................................................................11

*Jander v. Ret. Plans Comm. of IBM*,
   910 F.3d 620 (2d Cir. 2018)........................................................16, 22, 23, 24

*In re JPMorgan Chase & Co. ERISA Litig.*,
  2016 WL 110521 (S.D.N.Y. Jan. 8, 2016), *aff'd sub nom.*, *Loeza v. Does*, 659
  F. App'x 44 (2d Cir. 2016) .........................................................................................21, 25

*Kinra v. Chi. Bridge & Iron Co.*,
  2018 WL 2371030 (S.D.N.Y. May 24, 2018) ................................................................21, 22

*Krulls v. Davidson*,
  1989 WL 49771 (N.D.N.Y. May 9, 1989) ........................................................................ 5-6

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
  95 F. Supp. 3d 402 (S.D.N.Y. 2015) .................................................................................3

*Levy v. Huszagh*,
  2012 WL 4512038 (E.D.N.Y. Sept. 28, 2012) ...................................................................18

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) .........................................................................................................11

*Malin v. XL Capital Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ....................18

*Malone v. Teachers Ins. & Annuity Ass'n of Am.*,
  2017 WL 913699 (S.D.N.Y. Mar. 7, 2017) ........................................................................11

*Marvel Characters, Inc. v. Simon*,
  310 F.3d 280 (2d Cir. 2002) ..............................................................................................6

*Mirarchi v. Seneca Specialty Ins. Co.*,
  2011 WL 2982401 (E.D. Pa. July 22, 2011) .......................................................................17

*Murphy v. IBM Corp.*,
  2012 WL 566091 (S.D.N.Y. Feb. 21, 2012) ........................................................................6

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986) .................................................................................................6

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ....................................................................................................10, 14

*In re Polaroid ERISA Litig.*,
  362 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................................................14

*Price v. Strianese*,
  2017 WL 4466614 (S.D.N.Y. Oct. 4, 2017) .................................................................21, 22

*Rinehart v. Lehman Bros. Holdings Inc.*,
  817 F.3d 56 (2d Cir. 2016) ....................................................................................20, 23, 24

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   2016 WL 7494320 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017) ............... 3

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ................................................................................................ 4

*Saumer v. Cliffs Nat. Res. Inc.*,
   853 F.3d 855 (6th Cir. 2017) ......................................................................................... 21, 25

*Schultz v. Texaco Inc.*,
   127 F. Supp. 2d 443 (S.D.N.Y. 2001) .................................................................................. 13

*Singh v. RadioShack Corp.*,
   882 F.3d 137 (5th Cir. 2018) ..................................................................................... 14, 21, 25

*Slaymon v. SLM Corp.*,
   506 F. App'x 61 (2d Cir. 2012) ......................................................................................... 14

*In re SLM Corp. ERISA Litig.*,
   2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010), *aff'd*, 506 F. App'x 61 (2d Cir. 2012) ............. 3

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ................................................................................................. 5

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008) ........................................................................................... 9-10

*Stephens v. Nat'l Distillers & Chem. Corp.*,
   6 F.3d 63 (2d Cir. 1993) ..................................................................................................... 18

*In re SunEdison, Inc. ERISA Litig.*,
   331 F. Supp. 3d 101 (S.D.N.Y. 2018) ..................................................................... 14, 20, 21

*In re Target Corp. Sec. Litig.*,
   275 F. Supp. 3d 1063, 1088 (D. Minn. 2017) ........................................................................ 21

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ............................................................................................ 6
   2013 WL 4407094 (S.D.N.Y. Aug. 15, 2013) ........................................................................ 6

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) ............................................................................ 18, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................................. 7

*Waldman v. Vill. of Kiryas Joel*,
   39 F. Supp. 2d 370 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000) ............................ 8, 9

*In re Wells Fargo ERISA 401(k) Litig.*,
   2017 WL 4220439 (D. Minn. 2017) ........................................................................16, 21, 22

*White v. Chevron Corp.*,
   752 F. App'x 453 (9th Cir. 2018) .........................................................................................10

*Whitley v. BP, P.L.C.*,
   838 F.3d 523 (5th Cir. 2016) ........................................................................................15, 20

*In re WorldCom, Inc.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003).................................................................................14

**Statutes**

29 U.S.C. § 1103(a) (ERISA § 403(a)).......................................................................................12, 13

29 U.S.C. § 1108(c)(3) (ERISA § 408(c)(3)) .................................................................................14

29 U.S.C. § 1113(1) (ERISA § 413(1)) ...........................................................................................9

29 U.S.C. § 1002(16) (ERISA § 3(16)) ..........................................................................................13

**Other Authorities**

Paul Ausick, *Long-Term Care Insurance Harder to Get, More Expensive as Care
   Costs Rise*, 24/7 Wall St. (Nov. 8, 2018), https://bit.ly/2UwexVc ...........................................19

GE, Press Release, GE Provides Update on Insurance Review; $6.2B After-Tax
   GAAP Charge in 4Q'17 (Jan. 16, 2018), https://bit.ly/2HAVWDL ................................17, 19

Walecia Konrad, *The ever-rising cost of long-term care insurance*, CBS News
   (May 23, 2018), https://cbsn.ws/2IItRZ0................................................................................19

## INTRODUCTION

In her complaint, Plaintiff recycles and reasserts claims that were resolved by this Court a decade ago.  Plaintiff is trying to recover for alleged diminution in value of her General Electric ("GE") Stock Fund investment within the GE Retirement Savings Plan (the "Plan"), claiming that Plan fiduciaries knew GE's reinsurance subsidiaries lacked adequate reserves for their insurance liabilities and that GE's stock price was thereby inflated.  These exact claims were previously asserted and resolved by this Court.  Plaintiff should not be allowed a second bite at the apple.  Her Complaint should be dismissed for numerous independent reasons.

First, Plaintiff's claims are barred by *res judicata*.  Plaintiff was part of a class that, in 2009, settled an action filed in this Court against these same Defendants involving the same claims and nucleus of operative facts—allegations that Defendants knew GE's stock price was inflated because GE's insurance subsidiaries had under-reserved their insurance liabilities.  The class settled and released the exact claims asserted by Plaintiff here and received tens of millions of dollars in payments and other benefits in a settlement this Court approved.  Plaintiff's complaint is an impermissible attempt to revive these claims.  Second, to the extent they are not barred by *res judicata*, her claims are time-barred under ERISA's six-year statute of repose.

Third, neither GE nor former GE CEO Jeffrey Immelt (the two Defendants in this case) had authority over the management of the Plan's investment options.  Because these Defendants were not the relevant fiduciaries under ERISA, they cannot be held liable for the alleged breach.

Fourth, Plaintiff's claim for breach of the duty of loyalty (Count II) is premised on Defendants' supposed conflict of interest in standing to gain from a higher GE share price.  But the Second Circuit has rejected this exact theory because ERISA expressly allows corporations and their management—who all have this supposed conflict—to "serve as a fiduciary of [the] company's Plan."  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 145-46 (2d Cir. 2011), *abrogated*

*on unrelated grounds by Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409 (2014).  As courts recognize, if financial interest in a company's success constitutes an impermissible conflict, corporations and their management could never serve as plan fiduciaries when the plan holds employer stock.

Fifth, the stock-drop allegations fail to state a claim for breach of the duty of prudence (Count I) under the Supreme Court's holdings in *Dudenhoeffer* and *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016).  Plaintiff's allegation that Defendants had insider knowledge that GE's share price was artificially inflated is based on a flawed assumption that has been repeatedly rejected by courts within this Circuit—the assumption that merely because GE increased its reinsurance reserves **in 2018**, those reserves must have been inadequate years earlier.  This is not a plausible inference given the non-prescient nature of liability reserves, which invariably will change over time.  Further, even if Plaintiff had adequately alleged such insider knowledge, the prudence claim would still fail because, as nearly every court since *Amgen* has held, a prudent fiduciary could conclude that taking the kind of actions Plaintiff suggests based on that purported insider knowledge could "caus[e] a drop in the stock price and a concomitant drop in the value of the stock already held by the fund."  *Dudenhoeffer*, 573 U.S. at 430.[1]

For all of these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## BACKGROUND

The Plan is a 401(k) plan offered to eligible U.S. employees of GE and its subsidiaries. Each participant is responsible for investing the assets in her account among the nearly 30 available investment options in the Plan line-up, which span the risk/reward spectrum and include a diverse array of passively managed index funds, actively managed funds, domestic and

---

[1] *See infra* pp 20-21 & n.16 (citing more than ten cases).

international equity funds, and bond and money market funds.  Santos Decl. Ex. C, at 76; Ex. D, at 172.[2]  Some of these options are required to be offered by the Plan document itself, including the GE Stock Fund.  Santos Decl., Ex. C, at 32; Ex. D, at 122.

Defendants are GE and Jeffrey Robert Immelt, GE's former CEO and Chairman of the Board of Directors.  Plaintiff Adele Varga is a participant in the Plan.  She purports to bring this lawsuit on behalf of the Plan and all participants or beneficiaries of the Plan who invested in the GE Stock Fund on or after January 1, 2010, and continued to maintain that investment until at least January 19, 2018.  Plaintiff alleges that Defendants have known since 2006 that GE's stock was inflated because two GE reinsurance subsidiaries "under-reserved" their long-term care ("LTC") liabilities, Compl. ¶¶ 128-148, and should have publicly disclosed this fact or eliminated the GE Stock Fund for new contributions, Compl. ¶¶ 65, 96.

If this sounds familiar, that's because it is.  In 2006, Plan participants brought a virtually identical class action complaint (the "2006 action") against both GE and Mr. Immelt, before this very Court, likewise alleging that GE had knowingly under-reserved its insurance liabilities and asserting that the defendants breached ERISA's duties of prudence and loyalty by continuing to offer GE stock to Plan participants and/or failing to disclose the under-reserve issues.  Santos

---

[2] The Plan's governing documents are the Plan document and the Plan Trust Agreement referenced therein, which have been submitted herewith as exhibits to the Santos Declaration. These documents are properly considered on a motion to dismiss and, indeed, the Complaint expressly incorporates the Plan document by reference, as well as the Plan's publicly filed Form 5500 (Compl. ¶¶ 25, 26, 28-29, 119, 122).  *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 406 n.2 (S.D.N.Y. 2015) (collecting cases considering plan documents in deciding motions to dismiss); *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *2 (S.D.N.Y. Sept. 24, 2010) (considering Plan document), *aff'd*, 506 F. App'x 61 (2d Cir. 2012); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (incorporation by reference); *see also Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *9 (D. Conn. Dec. 30, 2016) (Form 5500 judicially noticeable), *aff'd*, 718 F. App'x 3 (2d Cir. 2017).

Decl., Ex. F (complaint in 2006 action).[3]  That case was settled in 2009 for $10.15 million cash,

significant Plan changes that were valued at more than $100 million, and $10 million in

attorneys' fees.  Santos Decl., Ex. G at 431, 433; Ex. H, at 455.[4]  The settling class members

were expressly informed that, in exchange for these benefits, they released all claims, known or

unknown, asserted or unasserted, "that arise out of or relate, in whole or in part, to the facts,

events, acts, omissions, transactions, or occurrences directly or indirectly alleged, asserted, or

described in the Complaint, including . . . the Company's and/or its affiliates' insurance

reserving practices."  Ex. J, at 570.  The settlement was reviewed and approved by an

independent fiduciary to the Plan and approved by this Court.  *Id.* at 569-571.  Plaintiff was a

member of the settlement class, filed no objection, and received the substantial benefits of that

settlement.  *See* Compl. ¶¶ 6, 119; Santos Decl., Ex. H.

Plaintiff's Complaint acknowledges that this action is a repeat of the 2006 class action.

*See e.g.* Compl. ¶¶ 1, 4, 46-50.  The Complaint's two central allegations both hinge on the 2006

action:  (1) that GE's 2018 announcement of its statutory reserve contribution proves that "the

Plan Participants' 2006 allegations were correct," *id.*, p. 11 (capitalization omitted), and (2) that

Plaintiff was misled by Defendants' denial of those allegations during the 2006 lawsuit and in

the 2009 class settlement notice.  *Id.* ¶¶ 5-6, 48-51.

With the 2006 class action as its foundation, Plaintiff's Complaint asserts two claims

here.  Count I alleges that Defendants breached ERISA's duty of prudence because they knew by

2006 that GE's share price was artificially inflated due to under-reserves by its subsidiaries, but

---

[3] The 2006 complaint is incorporated by reference into the Complaint (at ¶ 47) and, like the other court filings cited herein, is also judicially noticeable.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

[4] The structural changes included, among other things, online investment tools and education, new investment options, and Roth contributions.  Santos Decl., Ex. H, at 455, 474-476.

4

they failed to disclose this to Plan participants or freeze new investments in the GE Stock Fund.

Compl. ¶¶ 128-134.  Count II alleges that Defendants breached ERISA's duty of loyalty because

an inflated share price benefitted GE and Mr. Immelt financially.  Compl. ¶¶ 105-111, 135-148.

## <u>MOTION TO DISMISS STANDARD</u>

To survive dismissal, a complaint must "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)).  Determining whether a

complaint has pled a "plausible" claim is "a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense"; this standard is not met where the

complaint does not "permit[] the court to infer more than the mere *possibility* of misconduct."

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712

F.3d 705, 719 (2d Cir. 2013) (citation omitted).

## <u>ARGUMENT</u>

### I.     **Plaintiff's Complaint Is Barred by *Res Judicata*.**

Plaintiff's claims are barred by *res judicata* because they were previously asserted against

Defendants in the 2006 action and released by the class (which included Plaintiff) in 2009

through a class settlement.  Plaintiff's claims are effectively an impermissible collateral attack on

that settlement.

The doctrine of *res judicata* "holds that a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action."  *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017)

(quotation marks omitted).  Although *res judicata* is an affirmative defense, it is "settled in this

Circuit 'that in the interest of efficient and expeditious judicial administration, the defense of *res

judicata* can be raised and considered at the pretrial stage.'"  *Krulls v. Davidson*, 1989 WL

49771, at *2 (N.D.N.Y. May 9, 1989) (footnote and citation omitted).  Indeed, complaints are regularly dismissed on this basis at the pleading stage.  *See, e.g.*, *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014); *Murphy v. IBM Corp.*, 2012 WL 566091, at *9– *11 (S.D.N.Y. Feb. 21, 2012) (applying *res judicata* to ERISA claims).

*Res judicata* bars a plaintiff's claims if the previous action involved "a final judgment on the merits, by a court of competent jurisdiction, in a case involving the same parties or their privies, and involving the same causes of action."  *Vargas*, 559 F. App'x at 26.  That is so here.

First, the 2006 action ended in a class settlement approved by this Court, and "[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002).  "Such a dismissal constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal quotation marks omitted); *see also Murphy*, 2012 WL 566091, at *7 (ERISA class settlement satisfies the "final judgment on the merits" requirement).

Second, the 2006 action involved the same parties as this action.  Defendants GE and Mr. Immelt were both defendants in the 2006 action.  Santos Decl., Ex. F, ¶¶ 17, 50.  And as is evident from the Complaint, Plaintiff is a long-time Plan participant and was part of the settlement class.  *See* Compl. ¶¶ 6, 119; Declaration of Eric Kierkegaard.[5]

Third, both of these cases involve the same claims and a "common nucleus of operative facts."  *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 73 (2d Cir. 2003).  In

---

[5] The Kierkegaard declaration is properly considered on this motion for the limited purpose of identifying the recipients of the Court-ordered class notice.  *See, e.g.*, *Vargas v. Capital One Fin. Advisors*, 2013 WL 4407094, at *2 (S.D.N.Y. Aug. 15, 2013) (granting motion to dismiss based on *res judicata*), *aff'd*, 559 F. App'x at 27 (affirming and citing administrator declaration).

*Burgess v. Citigroup Inc.*, for example, individuals who had been members of a settlement class in a securities action subsequently attempted to pursue a Financial Industry Regulatory Authority (FINRA) arbitration premised on the same theory advanced in the securities litigation—"that Citigroup's stock price was inflated by 'belated and continuous disclosures and concealment' or 'continuous misstatements and omissions.'"  624 F. App'x 6, 8 (2d Cir. 2015).[6]  Although they asserted in the FINRA action "additional facts" that "were not at issue in the securities class action," the district court enjoined the FINRA proceedings because the claims in both actions relied on the same underlying factual predicate, and the Second Circuit affirmed, concluding that the claims in the FINRA proceeding had been released.  *Id.* at 8-9.

Plaintiff's claims here are likewise barred by *res judicata* because her current claims and the claims she released in 2009 are all part of a common nucleus of operative facts—Defendants' failure, despite their alleged knowledge that GE's reinsurance subsidiaries were under-reserving their insurance liabilities, to stop new investments in the GE Stock Fund or disclose that information.  Indeed, the 2009 settlement class was informed that the settlement released all claims "that arise out of or relate, in whole or in part, to the facts, events, acts, omissions, transactions, or occurrences directly or indirectly alleged, asserted, or described in the Complaint, including (a) the Plan's holding of Company Stock for Participants in the Plan during the Class Period and/or (b) the Company's and/or its affiliates' insurance reserving practices during the Class Period."  Santos Decl., Ex. J, at 570; *see also* Santos Decl., Ex. K, at 578-579 (settlement agreement).[7]  That is just what Plaintiff complains of here: that Defendants knew from 2006-2009 that GE's reinsurance subsidiaries were under-reserved, but failed to publicly

---

[6] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-107 (2d Cir. 2005) (*res judicata* applies if later claims "share the same integral facts as settled claims").

[7] An independent fiduciary "reviewed and analyzed the scope of" that release and authorized the Plan to enter into the settlement.  Santos Decl., Ex. H, at 443, 473.

7

disclose this fact or stop investments into the GE Stock Fund, and instead denied that any under-reservation was taking place.  Compl. ¶¶ 4-6, 46-50, 65, 73, 84, 96, 131.

Plaintiff's Complaint even goes so far as to quote at length many of the allegations from the 2006 complaint, plainly demonstrating the common nucleus of operative facts in the two cases.  *Id.* ¶¶ 46-47.  Further, like here, the 2006 complaint asserted claims for breach of the duty of prudence based on alleged knowledge of insurance under-reservation, breach of the duty of loyalty based on Defendants' financial interest in the performance of GE stock, and breach of both duties based on alleged failures by Defendants to adequately investigate the insurance under-reservation, to disclose the risk to Plan participants, and to stop investments into the GE Stock Fund—the identical breaches and claims under the identical statute asserted here.  Santos Decl., Ex. F, ¶¶ 210-212, 216-217, 225-230, 233, 245-272.

*Res judicata* applies even though Plaintiff's Complaint asserts a different class period and references subsequent acts.  "[C]ourts have consistently applied *res judicata* to claims extending over time or involving seriatim transactions and events so long as they are sufficiently related."  *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 379 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000); *see also Burgess*, 624 F. App'x at 8-9 (applying *res judicata* despite allegations of "additional facts").[8]  What matters is that the material factual allegations overlap—both the 2006 action and the present Complaint allege that Defendants knew or should have known more than a decade ago that GE's stock price was inflated due to insurance under-reserves and breached their fiduciary duties by failing to investigate, failing to disclose the risk to Plan

---

[8] *See also Waldman*, 39 F. Supp. 2d at 379 ("the pleading of subsequent acts will not defeat *res judicata* when these additional facts arise from the same core of operative facts"); *Cameron v. Church*, 253 F. Supp. 2d 611, 620 (S.D.N.Y. 2003) (*res judicata* applies "when the subsequent facts are merely additional examples of the earlier-complained of conduct, such that the action remains based principally upon the shared common nucleus of operative facts").

participants, and continuing to allow investment in the GE Stock Fund.

*Res judicata* applies here because Plaintiff's new Complaint in this case simply asserts "additional instances of what was previously asserted"—continuing to allow investment in the GE Stock Fund despite purported knowledge of its inflated stock price and a failure to investigate or disclose insurance under-reserving. *Waldman*, 207 F.3d at 113. The class release negotiated in the 2006 action in exchange for more than $100 million in benefits to class members—including Plaintiff—must be accorded finality, or no ERISA fiduciary will ever be able to settle a class action without risk of being sued again for the same conduct during a subsequent class period. This case falls well within the recognized contours of *res judicata* and should therefore be dismissed with prejudice.

## II.        Plaintiff's Claims Are Time-Barred.

ERISA's statute of repose bars actions alleging a breach of fiduciary duty that occurred earlier than "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." ERISA § 413, 29 U.S.C. § 1113(1).

As noted above, Plaintiff's core allegations and claims are barred by *res judicata* because they are identical to what was asserted in the 2006 action or merely provide "additional instances of what was previously asserted." *Waldman*, 207 F.3d at 113. The only purported fiduciary conduct alleged here that was not expressly included in the 2006 complaint are the allegations that Defendants erroneously denied the allegations in the motion to dismiss, class settlement agreement, and class notice in that action. Not only are these allegations also barred by *res judicata*—because they are simply an effort to attack the prior settlement as inadequate to resolve the dispute—they are time-barred as well, as all of these instances of alleged misconduct occurred well over six years ago. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425

9

(2d Cir. 2008) (claims may be dismissed at the pleading stage where it is "clear from the face of the complaint" that they are time-barred); *see, e.g.*, *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming dismissal of ERISA claim based on statute of repose), *pet. for certiorari on unrelated issue docketed*, No. 18-1271 (Apr. 3, 2019).

Thus, if any aspects of Plaintiff's claims were not barred by *res judicata*, they are barred by ERISA's statute of repose and should be dismissed with prejudice on that basis.

### III.   Plaintiff's Claims All Fail Because Defendants Lacked Fiduciary Authority over Investment Decision-Making.

Plaintiff's claims also fail for lack of relevant fiduciary status.  "In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *In re DeRogatis*, 904 F.3d 174, 191 (2d Cir. 2018) (alterations in original) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).  That is because "fiduciary status is not an all-or-nothing proposition."  *Agway, Inc., Emps.' 401(k) Thrift Inv. Plan v. Magnuson*, 2006 WL 2934391, at *13 (N.D.N.Y. Oct. 12, 2006).  An ERISA fiduciary "may be an ERISA fiduciary with respect to certain matters but not others," and "fiduciary status exists only 'to the extent' that the person 'has or exercises the described authority or responsibility' over a plan."  *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (citations omitted).  This is particularly true for employers who sponsor ERISA plans: they are permitted to "wear two hats," acting "as both plan administrators and employers."  *Bell v. Pfizer, Inc.*, 626 F.3d 66, 74 (2d Cir. 2010) (citation omitted).  Such defendants can be liable for a fiduciary breach ***only*** when they are taking actions that fall under their "fiduciary role," rather than their employer role.  *Id.*

Thus, to determine whether a complaint adequately states a fiduciary-breach claim against a particular defendant, the Court must examine the "particular activity in question," the

defendant's role in that activity, and whether the plan document allocates to the defendant discretionary authority over that activity. *Agway*, 2006 WL 2934391, at \*13-\*14 (citation omitted). Where the conduct at issue is not a fiduciary function, or where the plan document expressly allocates discretionary authority to someone else, courts do not hesitate to dismiss fiduciary-breach claims at the pleading stage. *See, e.g.*, *id.* at \*15; *Malone v. Teachers Ins. & Annuity Ass'n of Am.*, 2017 WL 913699, at \*4 (S.D.N.Y. Mar. 7, 2017); *Fleming v. Fid. Mgmt. Tr. Co.*, 2017 WL 4225624, at \*5 (D. Mass. Sept. 22, 2017). Plaintiff's claims here fail for precisely this reason. The Complaint bases Defendants' purported fiduciary status either on conduct that is not a fiduciary function at all, or on discretionary authority that the Plan document clearly allocates to someone else.

### A.     Mr. Immelt's Alleged Power to Amend the Plan Document Did Not Make Him a Fiduciary with Respect to Investment Decision-Making.

The Complaint alleges that Mr. Immelt was a fiduciary by virtue of his power, as a member of GE's Board of Directors and as CEO, to suspend, terminate, or amend the Plan. Compl. ¶¶ 28-29. But the Supreme Court has repeatedly held that the power to adopt, modify, or terminate ERISA plans is ***not*** a fiduciary function, but rather a non-fiduciary "settlor" function. *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [an individual] makes a decision regarding the form or structure of the Plan . . . ."). Thus, Mr. Immelt's alleged power to "amend any provision of [the] Plan" (Compl. ¶ 29) does not make him a fiduciary. *E.g.*, *Gannon v. NYSA-ILA Pension Tr. Fund & Plan*, 2011 WL 868713, at \*7 (S.D.N.Y. Mar. 11, 2011) (holding that amending a plan is not a fiduciary act and dismissing fiduciary-breach claims); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1161 (3d Cir. 1990) ("Virtually every circuit has rejected the proposition that ERISA's fiduciary duties attach to an

11

employer's decision whether or not to amend an employee benefit plan." (citations omitted)).

> **B.      GE's Authority To Amend the Plan Document and Role as Plan
>           Administrator Provides GE with No Discretionary Authority over
>           Investment Decision-Making.**

Plaintiff asserts two theories of GE's fiduciary status.  First, Plaintiff asserts that GE is a fiduciary because of its "authority to amend the Plan to eliminate the GE Stock Fund."  Compl. ¶ 97.  This theory fails because, as explained above, the authority to amend the Plan document is not a fiduciary function, and "[f]iduciary duty . . . rules apply only to decisions by an employer acting in its fiduciary capacity."  *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 87-88 (2d Cir. 2001).

Second, Plaintiff asserts that, by virtue of its role as plan administrator, GE has "discretion to administer, control, and manage the Plan's investment options" "under the terms of the Plan."  Compl. ¶ 27.  This allegation, too, fails.  To begin with, it is conclusory and fails under *Iqbal*.  *See Allen v. Bank of Am. Corp.*, 2016 WL 4446373, at *7 (S.D.N.Y. Aug. 23, 2016) (rejecting "conclusory statements" that the defendants "had fiduciary duties under ERISA because they exercised discretionary authority or control over management of the ERISA Plans, or exercised authority or control with respect to the disposition of Plan assets"), *aff'd*, 895 F.3d 214 (2d Cir. 2018).  It is also refuted by ERISA and by the Plan document, each of which demonstrates that the Plan trustees, and ***not*** GE, have discretionary authority to manage the Plan's investment options.

ERISA requires plans to have one or more trustees and vests such trustees with "exclusive authority and discretion" to hold the plan assets "in trust" and to manage those assets, except to the extent that the plan ***expressly*** provides that (i) the trustee is subject to the direction of another named fiduciary, or (ii) one or more investment managers has been delegated the authority to manage plan assets.  *See* ERISA § 403(a), 29 U.S.C. § 1103(a).  ERISA does not vest those duties in the plan administrator.  Indeed, ERISA makes clear that the trustee and

administrator duties are distinct.  *Compare* ERISA § 403(a), 29 U.S.C. § 1103(a) (describing a "trustee"), *with* ERISA § 3(16), 29 U.S.C. § 1002(16) (describing an "administrator").

In addition, courts look to the "plan at issue" to determine relevant fiduciary status. *Cerasoli v. Xomed, Inc.*, 47 F. Supp. 2d 401, 406 (W.D.N.Y. 1999).  Where, as here, a defendant does not have authority to manage the plan's assets, the claim must be dismissed.  For example, in *Bekker v. Neuberger Berman Group LLC*, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018), the complaint alleged that the defendants breached their fiduciary duties by maintaining an investment fund managed by affiliates of the plan sponsor.  *Id.* at *1.  It also alleged that Neuberger Berman Group LLC was "the Plan administrator 'responsible for selecting, monitoring, and removing the investment options in the Plan.'"  *Id.* at *2.  But the plan document conclusively contradicted that allegation: it "specifically provide[d]" that the plan administrator did not have authority with respect to the management of plan assets; instead, the plan document named "the Investment Committee" as the fiduciary for those functions.  *Id.* at *2.  The court therefore dismissed fiduciary breach claims against Neuberger Berman Group LLC.  *Id.* at *10.[9]

This case is virtually identical.  As in *Bekker*, the Plan document here makes clear that GE's duties as plan administrator do ***not*** include authority to manage the Plan's investment options.  Instead, all plan assets are held in a trust and the Plan provides that the ***Plan's Trustees*** "shall have the sole and exclusive authority and discretion . . . to manage and control the assets of the Trust," unless "otherwise expressly provided" in the Plan document or Trust Agreement referenced therein.  Santos Decl. Ex. C, at 76; Ex. D, at 172; Ex. E (Trust Agreement).  Nothing

---

[9] *Accord Agway*, 2006 WL 2934391, at *14 (dismissing claim because the plan placed responsibility for managing plan assets with other fiduciaries and vested in the Administration Committee authority only over administrative aspects of the plan); *see also, e.g.*, *Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 452 (S.D.N.Y. 2001) (examining plan terms to determine fiduciary authority).

in the Plan document or Trust Agreement (Santos Decl., Exs. C-E) 'otherwise' expressly place

this responsibility with the Plan Administrator.  Just as in *Bekker* and *Agway*, the Plan document

here makes clear that GE did not have fiduciary authority over the management of the Plan's

investment options or the GE stock held by the Plan trust.

Because neither of the Defendants had fiduciary authority over the Plan's investment

options, the Complaint must be dismissed.

## IV.      Plaintiff's Loyalty Claim (Count II) Fails as a Matter of Law.

Plaintiff's loyalty claim (Count II) is premised entirely on the theory that Defendants

were "hopelessly conflicted" and inherently had a "financial incentive" to maintain an allegedly

inflated stock value because, as the company itself and as its CEO, Defendants benefitted from

an inflated GE stock price.  Compl. ¶¶ 104-116, 135-148.  As the Second Circuit and other courts

have recognized, these allegations fail to state a duty-of-loyalty claim because the liability theory

Plaintiff posits would make it impossible for *any* corporation or corporate manager to "ever

serve as a fiduciary of his company's Plan" when the plan holds employer stock.  *In re Citigroup*

*ERISA Litig.*, 662 F.3d at 145-146.  Yet ERISA expressly authorizes corporate officers and plan

sponsors to do so.  *See, e.g.*, *Pegram*, 530 U.S. at 225 ("Employers . . . can be ERISA

fiduciaries," and ERISA fiduciaries "may have financial interests adverse to beneficiaries.");

ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3).  That is why "many courts" have rejected Plaintiff's

"severe interpretation" of ERISA's loyalty provisions.  *In re Citigroup*, 662 F.3d at 146.[10]

---

[10] *See e.g.*, *Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018) (such a theory would make stock ownership "synonymous with a plausible claim of fiduciary disloyalty"); *Slaymon v. SLM Corp.*, 506 F. App'x 61, 65 (2d Cir. 2012); *Coulter v. Morgan Stanley & Co., Inc.*, 936 F. Supp. 2d 306, 320-321 (S.D.N.Y. 2013); *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d 101, 115 (S.D.N.Y. 2018) ("Plaintiffs' allegations that some defendants had a financial interest in the performance of SunEdison stock is insufficient to allege a breach of the duty of loyalty."), *appeal docketed*, No. 18-2621 (2d Cir. Aug. 31, 2018); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 768 (S.D.N.Y. 2003);

Because Plaintiff's breach-of-loyalty claim relies on nothing more than the inherent financial interest corporations and their officers necessarily have in the share price of company stock—a theory that has been consistently rejected by courts—Count II fails as a matter of law.

## V.      Count I Fails To State a Claim for Breach of the Duty of Prudence.

Plaintiff's prudence claim (Count I) asserts that Defendants breached their fiduciary duties by continuing to offer the GE Stock Fund as required by the Plan and failing to disclose the alleged reserving concerns despite alleged insider knowledge that GE's stock price was inflated.  Compl. ¶¶ 11-12, 128-134.  Plaintiff bears a "significant burden" in asserting such a claim, *Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016), for four reasons articulated by the Supreme Court in its *Dudenhoeffer* decision.

First, Congress has "written into law its 'interest in encouraging'" employers to offer employer stock in employee-benefit plans by authorizing employee stock ownership plans (ESOPs) and exempting them from ERISA's diversification requirement.  *Dudenhoeffer*, 573 U.S. at 416.  Second, and related to the first, the plan document itself often requires that employer stock be made available for participant investment (as the Plan does here, *see supra* p. 3).  As a result, ERISA lawsuits involving company stock pose a "heads I win, tails you lose" dilemma:  a fiduciary that *stops* offering plan-mandated company stock could be sued for failing to follow the plan document if the price rebounds and the fiduciary has effectively locked in losses for participants, while a fiduciary that ***continues to invest*** in company stock could be sued for acting imprudently by following the plan document if the stock price declines.  *Id*. at 424.

Third, "ERISA's duty of prudence cannot require an ESOP fiduciary to perform an action—such as divesting the fund's holdings of the employer's stock on the basis of insider

---

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011).

information—that would violate the securities laws." *Id.* at 428. Fourth, any action taken by a fiduciary based on insider information—such as "stopping purchases" or "publicly disclosing negative information"—could have a significant negative impact on the share price as a whole, because "the market might take [those actions] as a sign that insider fiduciaries viewed the employer's stock as a bad investment." *Id.* at 430. And a fiduciary would quite properly be reticent to take any action that could cause "a concomitant drop in the value of the stock" because doing so could harm plan participants ***currently invested*** in that stock.

Thus, Plaintiff must satisfy "a very tough standard" to state a duty-of-prudence claim in this context. *In re Wells Fargo ERISA 401(k) Litig.*, 2017 WL 4220439, at *2 (D. Minn. 2017). First, a claim based on "insider knowledge" unsurprisingly requires a plausible allegation that Defendants "knew that [GE stock] was artificially inflated." *Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620, 628 (2d Cir. 2018), *pet. for certiorari docketed*, No. 18-1165 (Mar. 8, 2019). Second, Plaintiff must plausibly allege "an alternative action that the defendant could have taken that would have been consistent with the securities laws," and "that a prudent fiduciary in the same position 'could not have concluded' . . . 'would do more harm than good.'" *Amgen*, 136 S. Ct. at 759-760 (citation omitted). Plaintiff fails to plausibly allege either element.

### A. Plaintiff Fails To Plausibly Allege that Defendants Knew GE's Insurance Subsidiaries Under-Reserved Their Long-Term Care Liabilities.

Plaintiff alleges that Defendants knew by 2006—or, at the latest, by 2009—that GE's stock price was artificially inflated because GE's reinsurance subsidiaries had under-reserved their liabilities. Compl. ¶¶ 4, 6, 65, 73, 84, 96, 131. But she provides no factual allegations plausibly suggesting that this is so. Instead, her theory of insider knowledge relies on a leap of logic that has been repeatedly rejected by courts and that fails the *Twombly/Iqbal* plausibility requirement. Plaintiff's theory is that this Court can infer that the reinsurance subsidiaries had

inadequate reserves *in 2006*, and that Defendants knew and lied about it during the 2006 litigation, based on GE's announcement *in 2018* that—after a "comprehensive review and reserve testing for GE Capital's run-off insurance portfolio" initiated in 2017—it would be making a substantial reserve contribution to its reinsurance subsidiaries.[11]  Compl. p. 11 ("The Plan Participants' 2006 Allegations were Correct: In 2018, GE Admits that it Under Reserved its Insurance Liabilities by $15 Billion . . . .").  But given the well-established uncertainty and variability inherent in liability reserves, there can be no inference that reserves were *actually* inadequate in 2006 (or 2009) based on a reserve contribution 12 years later, much less that Defendants *knew* in 2006 that GE's subsidiaries should have reserved greater amounts.

Under GAAP, reinsurers must maintain "loss reserves" that include "estimates" of future claims.  *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 56-57 (S.D.N.Y. 2015).  Estimating reserves for future liabilities entails "considerable uncertainty" because there are often "delays . . . in the discovery and reporting of claims," and reinsurers must rely on "data from past claims experience," *Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1229 (2d Cir. 1991), while actual future claims experience may differ.  Reinsurers also must make complex actuarial assumptions about future conditions like health and life expectancy rates and healthcare costs, as well as interest rates and investment performance that will determine the future growth of their financial reserves, all of which may change over time.  *See Mirarchi v. Seneca Specialty Ins. Co.*, 2011 WL 2982401, at *2 (E.D. Pa. July 22, 2011) (noting that setting reserves requires consideration of a "multitude of factors"); *Hess v. Am. Physicians Capital, Inc.*, 2005 WL 459638, at *11 (W.D. Mich. Jan. 11, 2005) (noting the "many risk factors" of setting reserves, particularly given the uncertainty of certain markets).

---

[11] Compl. ¶¶ 8, 51-57; GE, Press Release, GE Provides Update on Insurance Review; $6.2B After-Tax GAAP Charge in 4Q'17 (Jan. 16, 2018), https://bit.ly/2HAVWDL.

Thus, reserve calculations that were accurate according to the data and assumptions available when made often "need adjustment as time passes," based on changes in claims experience and key actuarial inputs.  *Stephens v. Nat'l Distillers & Chem. Corp.*, 6 F.3d 63, 65 (2d Cir. 1993); *see also Delta*, 945 F.2d at 1231 ("The incidence of claims may change, the costs of defense may increase, and inflation may lead to unexpectedly high losses per claim.").  While reserve levels "must be reported as liabilities in the financial records of an insurance company," these numbers "are only estimates" of what the future liabilities might prove to be.  *Stephens*, 6 F.3d at 65.[12]

Because of the inherent variability of these factors over time, and because prescience is impossible, courts have recognized that an increase in reserves—even a "massive increase"—"is not, in itself, an indicator that the previous reserve levels were inadequate."  *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 361 (S.D.N.Y. 2011) (citation omitted).  As the court said in *City of Westland*, "the fact that [a company's loss] reserves ultimately proved insufficient is not determinative" of their original adequacy.  129 F. Supp. 3d at 73.

For the same reasons, courts have repeatedly refused to infer that defendants knowingly maintained inadequate reserves simply from a later reserve increase coupled with "generalized allegations" of such knowledge by defendants.  *E.g.*, *In re Wachovia*, 753 F. Supp. 2d at 361-362; *Malin*, 499 F. Supp. 2d at 145-146 ("Plaintiffs must do more than allege that Defendants could not have actually believed that loan loss reserves were adequate because they later increased reserves.").[13]  This, of course, makes sense: courts are not to infer wrongdoing where

---

[12] For all of these reasons, courts have consistently acknowledged "the difficulty of calculating and monitoring the accuracy of loss reserves."  *Stephens*, 6 F.3d at 65; *see also Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 145-146 (D. Conn. 2007) ("the process of estimating loss reserves is a difficult one"), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

[13] *See also Levy v. Huszagh*, 2012 WL 4512038, at *4 (E.D.N.Y. Sept. 28, 2012) (complaint did "not plausibly suggest that Defendants' conduct crossed the line . . . to knowingly improper conduct" in making reserve calculations); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685,

there is a "natural" or "obvious" alternative explanation.  *Twombly*, 550 U.S. at 567-568.  And given the widely acknowledged variability of insurance reserve estimates over time, an increase in insurance reserves has a "natural" alternative explanation—that they were increased as a result of changes in claims experience and other factors over subsequent years.

Indeed, this is a particularly obvious alternative explanation in the current context—reinsurance of long-term care, an area in which assumptions have changed significantly over time as the cost of health care, the popularity of assisted living facilities, and life expectancies have all increased.[14]  Compl. ¶¶ 35-37; *see also* Compl. ¶ 53 (noting that GE announced in 2017 that it would conduct an assessment of its long-term care portfolio given recent "adverse claims experience"); GE, Press Release, GE Provides Update on Insurance Review; $6.2B After-Tax GAAP Charge in 4Q'17 (Jan. 16, 2018), https://bit.ly/2HAVWDL (announcing that GE was making reserve contributions following the "comprehensive review" of its subsidiaries' "insurance reserves with the assistance of leading outside experts" disclosed in 2017).

In short, Plaintiff's prudence claim (and her duty-of-loyalty claim, if that claim were not otherwise barred as a matter of law) rests on a house built of straw—the notion, repeatedly rejected by courts, that insider knowledge of inadequate reserves can be inferred from a later reserve increase.  In *Dudenhoeffer*, the Supreme Court cautioned that district courts must undertake the "important task" of "weeding out meritless [stock-drop] claims" at the motion-to-dismiss stage by taking a "careful, context-sensitive scrutiny of a complaint's allegations."  573

690-691 (S.D.N.Y. 2004) ("Given the absence of any facts to show that defendants did not believe, or have a reasonable basis to believe, that the reserves were adequate, this Court cannot simply draw an inference based upon mere speculation that this was the case.").

[14] Paul Ausick, *Long-Term Care Insurance Harder to Get, More Expensive as Care Costs Rise*, 24/7 Wall St. (Nov. 8, 2018), https://bit.ly/2UwexVc (annual cost of care of assisted living facility "ballooned" from $28,800 in 2004 to $48,000 in 2018); Walecia Konrad, *The ever-rising cost of long-term care insurance*, CBS News (May 23, 2018), https://cbsn.ws/2IItRZ0.

U.S. at 425.  In the current context, it is clear that the Complaint does not adequately plead that the "previous reserve levels were inadequate," much less that Defendants knew that they were inadequate, simply because GE announced an increase years later in 2018.  *In re Wachovia*, 753 F. Supp. 2d at 361-362.  Therefore, Plaintiff's prudence claim based on Defendants' purported "insider knowledge" of insurance under-reserving fails.[15]

**B.      The Complaint Does Not Satisfy the Pleading Standard Set Forth by the Supreme Court in *Fifth Third v. Dudenhoeffer* and *Amgen v. Harris*.**

Plaintiff's claim also fails for an independent reason: Plaintiff's proposed alternative actions do not satisfy *Dudenhoeffer*'s "strenuous pleading requirements."  *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d 101, 111 (S.D.N.Y. Aug. 6, 2018), *appeal docketed*, No. 18-2621 (2d Cir. Aug. 31, 2018).

Plaintiff alleges two alternative actions Defendants should have taken by 2009 based on their supposed insider knowledge of under-reserving: (1) "correct" the earlier denials alleged in the 2006 complaint by informing Plan participants and the public at large that GE's reinsurance subsidiaries had under-reserved their insurance liabilities, Compl. ¶¶ 12, 65, 68; or (2) stop new contributions to the GE Stock Fund," Compl. ¶ 96.  But courts have overwhelmingly rejected ERISA prudence claims relying on precisely these allegations, because "a prudent fiduciary could very easily conclude that such actions would do more harm than good" by triggering a decline in stock price and harming plan participants already invested in that stock.  *Whitley*, 838 F.3d at 529; *e.g.*, *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016).[16]

---

[15] The Complaint also alleges that even if Defendants did not ***actually*** know about the under-reserves, they "would have learned of the problem had they" conducted an investigation after the 2006 class action lawsuit was filed.  *E.g.*, Compl. ¶¶ 11, 66, 73, 132.  But even putting aside whether a should-have-had-insider-knowledge claim is legally cognizable, this theory fails: the presumption that there would have been something to find upon investigation ***assumes*** rather than ***plausibly alleges*** that loss reserves actually were inadequate in 2006.

[16] *See also, e.g.*, *In re JPMorgan Chase & Co. ERISA Litig.*, 2016 WL 110521, at *4 (S.D.N.Y.

As these courts recognize, "[t]he fiduciary's decision should not be evaluated from the vantage point of hindsight," and "[t]rying to predict the impact of *anything* on the price of a company's stock—like trying to predict the impact of an athlete's injury on an upcoming game or the impact of a politician's gaffe on an upcoming election—is a highly speculative endeavor." *In re Wells Fargo*, 2017 WL 4220439, at *2, *4 (internal quotation marks omitted).  There are "numerous factors" that a fiduciary would have to consider "in determining whether disclosure would cause a fund more harm than good," such as the short-term and long-term impacts of disclosure, the extent of the plan's holdings in company stock, and the fiduciary's confidence that he "has all relevant information, so that a single complete and accurate disclosure can be made." *Id.* at *4-*5.  Moreover, "the market punishes uncertainty.  It is for that reason that a prudent fiduciary could easily conclude that disclosure before the company has all its ducks in a row"—here, before GE completed its comprehensive assessment of reinsurance reserves— "would do more harm than good."   *Price v. Strianese*, 2017 WL 4466614, at *8 & n.7 (S.D.N.Y. Oct. 4, 2017).  Because "[a] dozen fiduciaries in the same position could weigh the same factors and reach a dozen different (but equally prudent) conclusions about whether, when, how, and by whom negative inside information should be disclosed," *In re Wells Fargo*, 2017 WL 4220439,

---

Jan. 8, 2016), *aff'd sub nom.*, *Loeza v. Does*, 659 F. App'x 44 (2d Cir. 2016); *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 864 (6th Cir. 2017) ("Cliffs's fiduciaries could have concluded that divulging inside information about the Bloom Lake Mine would have collapsed Cliffs's stock price, hurting participants already invested in the ESOP."); *Fentress v. Exxon Mobil Corp.*, 2019 WL 426147, at *4-*5 (S.D. Tex. Feb. 4, 2019); *Kinra v. Chi. Bridge & Iron Co.*, 2018 WL 2371030, at *8 (S.D.N.Y. May 24, 2018); *Singh*, 882 F.3d at 149; *In re SunEdison*, 331 F. Supp. 3d at 111-112; *Price v. Strianese*, 2017 WL 4466614, at *7 (S.D.N.Y. Oct. 4, 2017); *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1088 (D. Minn. 2017); *In re Wells Fargo*, 2017 WL 4220439, at *5; *Graham v. Fearon*, 2017 WL 1113358, at *5 (N.D. Ohio Mar. 24, 2017), *aff'd*, 721 F. App'x 429 (6th Cir. 2018).

at *5, the universe of claims that survive *Dudenhoeffer* is "extremely narrow." *Price*, 2017 WL 4466614, at *8.

Plaintiff suggests that this is such an exceptional case because the inadequacy of reserves would have become publicly known eventually, and an "earlier truthful disclosure" would have caused less harm than a later one. Compl. ¶¶ 86, 92. These allegations have been expressly rejected by numerous courts, recognizing that fiduciaries' actions are not judged in hindsight and that a prudent fiduciary could reasonably conclude that early disclosure would "do more harm than good" when weighing the mere ***potential*** benefit of avoiding ***some*** losses at some undetermined future point in time against the near-certainty of immediate loss to plan participants caused by early disclosure. *Amgen*, 136 S. Ct. at 760; *see, e.g.*, *Kinra v. Chi. Bridge & Iron Co.*, 2018 WL 2371030, at *8 (S.D.N.Y. May 24, 2018) (the potential benefit of "avoiding later losses" from early disclosure "is not enough that no reasonable fiduciary could conclude that the harm from the drop in stock price and corresponding drop in value of Plan investments is necessarily outweighed") (collecting cases); *accord In re Wells Fargo*, 2017 WL 4220439, at *5-*6; *Price*, 2017 WL 4466614, at *7.

Indeed, since *Amgen* there has only been one case in which a court concluded that the plaintiffs adequately alleged an ERISA stock-drop claim premised on the "alternative action" of an earlier corrective disclosure, *Jander*, 910 F.3d 620, and that decision was expressly premised on its unique facts. There, the plaintiffs alleged that a business unit IBM began marketing for sale in 2013 was overvalued as a result of accounting violations. 910 F.3d at 623. When the company announced the sale in 2014, it disclosed an impairment of the business unit's previously stated value, which caused a stock decline that spawned an ERISA fiduciary breach lawsuit. *Id.* at 623. The Second Circuit held that the *Dudenhoeffer*/*Amgen* standard was met—

22

because the unique circumstance of IBM's impending sales of the business made it inevitable that the accounting issues would be disclosed in the very near term given that "a potential purchaser's due diligence would likely result in discovery of the business's problems." *Id.* at 630. The Second Circuit made clear that the complaint's allegation of facts demonstrating the inevitability of imminent disclosure was "particularly important" to its decision, because in those circumstances longer term "non-disclosure is no longer a realistic [option]." *Id.*

The court also noted that there were no market conditions, such as the 2008 market volatility, that would cause a fiduciary to fear an irrational overreaction by the market to the disclosure of the improper accounting practices. *Id.* at 629-630 (distinguishing *Rinehart*, 817 F.3d at 68, in which the Second Circuit rejected an ERISA stock-drop claim because freezing further contributions to the employers' stock "in the summer of 2008 could have had dire consequences").

Those facts are not present here. Instead, this case is indistinguishable from the myriad stock-drop cases since *Amgen* that have been dismissed at the pleading stage. Unlike in *Jander*, Plaintiff's Complaint alleges no facts suggesting disclosure was imminent. 910 F.3d at 623, 630. Recognizing the high burden imposed by *Dudenhoeffer* and *Amgen*, Plaintiff tries to shoehorn her claim into *Jander*'s unique fact pattern, asserting in conclusory fashion that GE "inevitably would have to fund the insurance subsidiaries with the billions of dollars needed to pay policyholder claims as they came due." Compl. ¶ 82. But the Complaint's alleged facts directly contradict any notion that disclosure was imminent. Indeed, Plaintiff alleges that Plan fiduciaries knew ***in 2006*** about under-reserve issues but the reserve shortfall was not disclosed ***until 2018***. This is a far cry from *Jander*, where disclosure was a virtual certainty in just a matter of months due to the impending sale, and thus the IBM fiduciaries no longer had the option or obligation to

"compare the benefits and costs of earlier disclosure to those of later disclosure." 910 F.3d at 630. Here, by contrast, under Plaintiff's alleged facts, the Plan fiduciaries (assuming they had knowledge) would have been faced with this precise choice—*i.e.*, whether to disclose in 2006 or wait to see how claism experience and other factors developed over the next decade. Plaintiff alleges that in the 2006-2009 timeframe, 40% of the multi-billion dollar GE Plan was held in the GE Stock Fund. Comp. ¶ 102. Even if Defendants had been aware of a reserve shortfall at that time, a prudent fiduciary could easily have concluded that disclosure then would have risked causing hundreds of millions of dollars in losses to Plan participants already invested in the Stock Fund. As another court recently concluded, the absence of a "major triggering event" rendering disclosure inevitable and imminent makes *Jander* inapplicable. *Fentress v. Exxon Mobil Corp.*, 2019 WL 426147, at *5 (S.D. Tex. Feb. 4, 2019) (dismissing claims where disclosure years later *may* have been "foreseeable" due to the existence of an investigation by the SEC and state attorneys general, "but the Court cannot say it was inevitable").

Furthermore, unlike in *Jander* and just as in *Rinehart*, a prudent fiduciary could have concluded that market conditions could have rendered an earlier disclosure harmful to Plan participants. Making a corrective disclosure at the close of 2009, as Plaintiff suggests (Compl. ¶ 65), when the market was extremely volatile and overreactive, "could have had dire consequences." *Jander*, 910 F.3d at 630 (quoting *Rinehart*, 817 F.3d at 68). In such a situation, a prudent fiduciary could easily have feared "an irrational overreaction to the disclosure." *Id.*

The same is true of Plaintiff's suggestion that Defendants could have simply "eliminated the GE Stock Fund as an option for future contributions." Compl. ¶ 96. Plaintiff alleges that 40% of the Plan's assets were invested in the GE Stock Fund. Compl. ¶ 102. As numerous courts have concluded in nearly identical cases, if the Plan suddenly ceased all investments in the

GE Stock Fund, a prudent fiduciary could readily conclude that it would trigger a decrease in stock price to the detriment of the Plan participants already invested in that fund. *See Dudenhoeffer*, 573 U.S. at 430 (noting that the market might take stopping purchases "as a sign that insider fiduciaries viewed the employer's stock as a bad investment"); *e.g.*, *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 864 (6th Cir. 2017); *Singh v. RadioShack Corp.*, 882 F.3d 137, 148-149 (5th Cir. 2018).[17]

Plaintiff's allegations have been rejected time and time again by courts across the country, including the Second Circuit. They should likewise be rejected here.

## CONCLUSION

The Complaint should be dismissed with prejudice.


Dated:  April 8, 2019                              Respectfully Submitted,

                                                   /s/ James O. Fleckner

Andrew C. Rose (Bar Roll No. 102473)               James O. Fleckner, admitted *pro hac vice*
NIXON PEABODY LLP                                  GOODWIN PROCTER LLP
677 Broadway, 10th Floor                           100 Northern Avenue
Albany, New York 12207                             Boston, MA 02210
(518) 427-2650                                     (617) 570-1000
acrose@nixonpeabody.com                            jfleckner@goodwinlaw.com

                                                   Jaime A. Santos, admitted *pro hac vice*
                                                   Goodwin Procter LLP
                                                   901 New York Avenue
                                                   Washington, D.C. 20001
                                                   (202) 346-4000
                                                   jsantos@goodwinlaw.com

                                                   *Attorneys for Defendants*

---

[17] *See also In re JPMorgan Chase & Co. ERISA Litig.*, 2016 WL 110521, at *3 (rejecting claim and noting that such a change would have triggered a required disclosure to plan participants and, under securities laws, to the public, which would have triggered a drop in share price).

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2019 this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ James O. Fleckner _____
James O. Fleckner