IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ADELE VARGA, Individually and On Behalf of All Others Similarly Situated,

       Plaintiff,

v.

GENERAL ELECTRIC COMPANY and JEFFREY ROBERT IMMELT,

       Defendants.

Case No. 1:18-cv-1449 (GLS/DJS)

---

# REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Andrew C. Rose (Bar Roll No. 102473)
NIXON PEABODY LLP
677 Broadway, 10th Floor
Albany, New York 12207
Phone: (518) 427-2650
Fax: (518) 427-2666
acrose@nixonpeabody.com

James O. Fleckner, admitted *pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Phone: (617) 570-1000
Fax: (617) 523-1231
jfleckner@goodwinlaw.com

Jaime A. Santos, admitted *pro hac vice*
GOODWIN PROCTER LLP
901 New York Avenue
Washington, D.C. 20001
Phone: (202) 346-4000
Fax: (202) 346-4444
jsantos@goodwinlaw.com

Dated: June 19, 2019

*Attorneys for Defendants*

ACTIVE/99984826.6

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................1

I. Plaintiff Has Not Established Defendants' Relevant Fiduciary Status. ...............................1

II. Plaintiff's Claims Cannot Survive *Res Judicata*. ................................................................2

III. Plaintiff's Claims Are Untimely. .........................................................................................5

IV. Plaintiff's Loyalty Claim Fails (Count II). ..........................................................................6

V. Plaintiff's Prudence Claim Fails (Count I). .........................................................................6

    A. Plaintiff Ignores the Requisite Context-Specific Analysis. ..........................................6

    B. Plaintiff Ignores the Relevant Post-*Dudenhoeffer* Cases. ............................................7

    C. Plaintiff Fails to Identify a Plausible Pleaded Alternative Action. ..............................9

    D. Plaintiff's Separate Disclosure Theory Does Not Salvage Her Claims. ......................9

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Asuncion v. Metro. Life Ins. Co.*,
 493 F. Supp. 2d 716 (S.D.N.Y. 2007)......................................................................................10

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
 763 F. Supp. 2d 423 (S.D.N.Y. 2011)........................................................................................9

*Black v. Bowes*,
 2006 WL 3771097 (S.D.N.Y. Dec. 21, 2006) .........................................................................10

*Cameron v. Church*,
 253 F. Supp. 2d 611 (S.D.N.Y. 2003)........................................................................................5

*Caputo v. Pfizer, Inc.*,
 267 F.3d 181 (2d Cir. 2001)......................................................................................................5

*In re CIT Grp., Inc. Sec. Litig.*,
 349 F. Supp. 2d 685 (S.D.N.Y. 2004)........................................................................................6

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
 129 F. Supp. 3d 48 (S.D.N.Y. 2015)..........................................................................................6

*Coulter v. Morgan Stanley & Co.*,
 753 F.3d 361 (2d Cir. 2014)......................................................................................................1

*DeFazio v. Hollister, Inc.*,
 636 F. Supp. 2d 1045 (E.D. Cal. 2009)................................................................................. 5-6

*Fentress v. Exxon Mobil Corp.*,
 2019 WL 426147 (S.D. Tex. Feb. 2, 2019) ...............................................................................8

*Fifth Third Bancorp v. Dudenhoeffer*,
 573 U.S. 409 (2014)...................................................................................................................6

*Jander v. Ret. Plans Comm. of IBM*,
 910 F.3d 620 (2d Cir. 2018)..................................................................................................7, 8

*In re Lehman Bros. Sec. & ERISA Litig.*,
 113 F. Supp. 3d 745 (S.D.N.Y. 2015).......................................................................................4

*Levy v. Huszagh*,
 2012 WL 4512038 (E.D.N.Y. Sept. 28, 2012) ..........................................................................6

*Loeza v. John Does 1-10*,
 659 F. App'x 44 (2d Cir. 2016) ........................................................................................7

*Malin v. XL Capital Ltd.*,
 499 F. Supp. 2d 117 (D. Conn. 2007) ...............................................................................6

*Marvel Characters Inc. v. Simon*,
 310 F.3d 280 (2d Cir. 2002) ..............................................................................................5

*O'Day v. Chatila*,
 __ F. App'x __, 2019 WL 2404660 (2d Cir. June 7, 2019) ......................................... 7-8

*Osberg v. Foot Locker, Inc.*,
 862 F.3d 198 (2d Cir. 2017) ..............................................................................................5

*Pugh v. Tribune Co.*,
 521 F.3d 686 (7th Cir. 2008) ............................................................................................4

*Rinehart v. Lehman Bros. Holdings Inc.*,
 817 F.3d 56 (2d Cir. 2016) ............................................................................................2, 7

*SEC v. First Jersey Sec., Inc.*,
 101 F.3d 1450 (2d Cir. 1996) ............................................................................................3

*In re Target Corp. Sec. Litig.*,
 275 F. Supp. 3d 1063 (D. Minn. 2017) .............................................................................8

*Tatum v. R.J. Reynolds Tobacco Co.*,
 247 F.R.D. 488 (M.D.N.C. 2008) ...................................................................................10

*Taveras v. UBS AG*,
 513 F. App'x 19 (2d Cir. 2013) .........................................................................................6

*TechnoMarine SA v. Giftports, Inc.*,
 758 F.3d 493 (2d Cir. 2014) ..............................................................................................3

*Tibble v. Edison Int'l*,
 135 S. Ct. 1823 (2015) ......................................................................................................5

*In re Wachovia Equity Sec. Litig.*,
 753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...........................................................................6, 7

*Waldman v. Vill. of Kiryas Joel*,
 39 F. Supp. 2d 370 (S.D.N.Y. 1999) .................................................................................5

*In re Wells Fargo ERISA 401(K) Litig.*,
 2017 WL 4220439 (D. Minn. Sept. 21, 2017) ..................................................................9

*Wilson v. Edison Int'l, Inc.*,
  315 F. Supp. 3d 1177 (C.D. Cal. 2018) ...............................................................................8

**Statutes**

29 U.S.C. § 1002(3)(21)(A)(i) (ERISA § 3(21)(A)(i)) ....................................................................1

29 U.S.C. § 1113 (ERISA § 413) .....................................................................................................6

ACTIVE/99984826.6

Plaintiff's opposition ("Opp.") (ECF No. 43) is riddled with inconsistencies, improperly rests on non-fiduciary corporate conduct by Defendants, and does not salvage her complaint, which should be dismissed for the reasons stated in Defendants' motion ("Mot.") (ECF No. 39).

## ARGUMENT

### I. Plaintiff Has Not Established Defendants' Relevant Fiduciary Status.

Plaintiff's arguments regarding Defendants' fiduciary status are meritless. This threshold deficiency is dispositive, as all of her claims are premised on relevant fiduciary status.

Plaintiff suggests that as long as Defendant GE is a fiduciary in **some** respect, **any** fiduciary breach claim can be asserted against it. Opp. 12, 14. That is wrong. It is black letter law that an ERISA fiduciary "may be an ERISA fiduciary with respect to certain matters but not others," and "fiduciary status exists only 'to the extent' that the person 'has or exercises the described authority or responsibility' over a plan." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (citations omitted); ERISA § 3(21)(A)(i); Mot. 10 (citing cases). GE's status as the "Plan administrator" with authority for Plan "administration" (Opp. 12) does not establish responsibility for the specific fiduciary functions challenged in the Complaint: utilizing the GE Stock Fund, and communicating information about that Plan option.[1]

Plaintiff completely ignores the division of responsibility set forth in ERISA and the Plan document, which cannot be clearer—**the Trustees**, and not GE, are expressly delegated the "sole and exclusive authority and discretion . . . to manage and control the assets of the Trust," Mot. 13 (citing Plan and ERISA), and to disclose information about investments to Plan participants. Santos Decl. Ex. C, at 77 ("The Trustees shall also be obligated to provide information to Participants and beneficiaries regarding the investment options under the Plan . . . ."); Santos

---

[1] Just like it sounds, "administration" refers to the administrative aspects of managing a plan—*e.g.*, recordkeeping, processing contributions and distributions, government reporting, etc.

Decl. Ex. D, at 173 (same).  Plaintiff equally ignores Defendants' authorities (Mot. 13) that address this precise distinction between plan administration and management of plan assets. Instead, she argues that none of GE's Plan administration responsibilities were delegated.  Opp. 13.  That is beside the point; her Complaint challenges the use of and disclosures about the GE Stock Fund, not any administrative aspects of plan management.  Finally, her argument that GE's Benefit Plans Investment Committee is not the relevant fiduciary (*id.*) is another red herring; Defendants do not argue that "the Committee" is the relevant fiduciary.[2]

As to Defendant Jeffrey Immelt, Plaintiff does not dispute that his alleged authority to amend the Plan document—the only fiduciary theory alleged in the Complaint—does not make him a fiduciary.  Instead, Plaintiff offers a new theory—that Mr. Immelt is a fiduciary because, as CEO, he "was responsible for carrying out Defendant GE's fiduciary functions."  Opp. 12-13. Because GE's plan administrator responsibilities are not the fiduciary function at issue here, this theory necessarily fails for Mr. Immelt too.[3]

Finally, Plaintiff now seeks to hold Defendants liable for allegedly failing to inform other fiduciaries about non-public information.  Opp. 14-15.  This theory also was not pled, but regardless has been expressly rejected by the Second Circuit, which Plaintiff fails to mention. *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) ("ERISA does not impose a duty on appointing fiduciaries to keep their appointees apprised of nonpublic information." (citation omitted)).  Plaintiff's claims thus fail for lack of relevant fiduciary status.

## II.   Plaintiff's Claims Cannot Survive *Res Judicata*.

Plaintiff does not dispute that all claims premised on events prior to the settlement release

---

[2] Plaintiff also raises a straw man by arguing that the Plan's requirement that the GE Stock Fund be offered is a "nullity."  Opp. 13.  Defendants did not invoke that provision in their Motion.
[3] In any event, the Complaint does not allege that Mr. Immelt carried out GE's administrative responsibilities—it merely alleges that the Board of Directors delegated to him the (non-fiduciary) authority to amend the Plan document. Opp. at 13 (citing Complaint ¶¶ 15, 28-29).

2

date of February 5, 2009, are barred.  Opp. 7.  And she effectively concedes that "[w]hen a subsequent action involves a claim over 'ongoing conduct,'" *res judicata* still applies unless the subsequent suit is "based upon legally significant acts occurring after the filing of a prior suit," *i.e.*, post-resolution "acts giving rise to "a 'new' cause of action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 500-01 (2d Cir. 2014); Opp. 8.[4]

Instead, Plaintiff tries to reframe her Complaint as resting only on "acts and breaches of fiduciary duty that occurred after that 2009 settlement." Opp. 1; *accord* 3, 4, 5, 7, 9, 11.  But her Complaint alleges exactly the opposite, focusing on 2006-2009 conduct and events that were conclusively resolved in a class settlement approved by this Court.  Mot. 4, 8; Compl. ¶¶ 4, 46, 65, 73-74, 93, 96, 131.[5]  Her pleading is unequivocal:  "by 2006 Defendants either knew that the GE stock value—and thus the value of the GE Stock Fund—was artificially inflated . . . or at least were put on notice of detailed allegations that gave rise to a duty to investigate."  Compl. ¶ 131.  By mid-brief, Plaintiff drops her ruse and admits that the prior lawsuit that Defendants settled in 2009 for tens of millions of dollars forms the crux of her current fiduciary-breach claims.  Opp. 9 ("[T]he prior lawsuit . . . triggered the Defendants' duty to investigate."); Opp. 24 (identifying the 2006 lawsuit as the key "red flag" that "gave rise to a duty to investigate").

While her Opposition points to two post-2009 acts (at 4), neither plausibly gives rise to a

---

[4] The cases Plaintiff cites, and other similar cases allowing claims to survive *res judicata*, involved independent actionable acts that occurred after the prior litigation.  *See, e.g.*, *TechnoMarine*, 758 F.3d at 503 (holding that a prior trademark lawsuit did not bar suit "for alleged new trademark violations"); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (settlement of claims involving 1975-1979 sales of securities did not bar claims that defendant defrauded customers in the sales of "other securities" in "subsequent transactions").
[5] For example, Plaintiff argues that "Defendants knew, or should have known, by the start of 2010 that the long-term care market had run into trouble," citing Complaint ¶¶ 82-83.  Opp. 3.  But paragraph 82 provides no supporting factual allegations, while paragraph 83 refers to a 2008 reserve adjustment by another insurance company and the financial difficulties of two other companies publicly announced on January 8, 2009, both prior to the settlement release date.  *See* https://bit.ly/2IqXCzV.

3

new duty to investigate because neither raises a "'red flag' of misconduct" under her own case, *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008) (cited at Opp. 24).

First, a 2018 news article stating that, at some unspecified time, unknown "executives resisted selling reinsurance assets" when investment bankers encouraged them to do so (Opp. 24; Compl. ¶ 78) is insufficient. Not only is the Complaint silent as to who knew of this purported encouragement or resistance and when, this allegation is not a plausible "red flag" that the market price of GE stock was not reliable. Investment bankers, who earn significant fees on deal activity, routinely recommend transactions to large global companies, which might be rejected for any number of reasons. Standing alone, that is hardly a reason for Plan fiduciaries to believe that the reinsurance subsidiaries were under-reserved, and certainly not to a degree that would cause them to "suspect that investing in company stock may be imprudent," Opp. 24, giving rise to a duty to investigate.

Second, GE's **publicly disclosed** contributions to its reinsurance subsidiaries (Opp. 24; Compl. ¶ 81) also fails. This type of information does not trigger a duty to investigate because the market incorporates information like this into the stock price. *E.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 760 (S.D.N.Y. 2015) ("*Dudenhoeffer* bars claims based on such public information precisely because the market is competent to react to it."), *aff'd sub nom. Rinehart*, 817 F.3d 56. In any event, this consistent financial support was far more likely to be a source of comfort for Plan fiduciaries than a cause of concern that reserves were inadequate.

In short, Plaintiff's scant post-2009 factual allegations, **taken alone**, would not remotely support a **new** claim that Defendants "knew in 2010 or after of the $15 billion problem with the insurance subsidiaries," Opp. 1, or had sufficient reason "to suspect that investing in company stock may be imprudent" to trigger a **new** duty to investigate. Opp. 24. That inference, if any,

4

could only arise from Plaintiff's invocation of the prior 2006 lawsuit and other pre-2009 events. Those settled allegations are the centerpiece of her Complaint and duty-to-investigate theory. *Res judicata* therefore applies because the "fundamental basis" of both the 2006 lawsuit and this lawsuit is the same: alleged knowledge of or failure to investigate under-reserves of insurance subsidiaries extending back to 2006. *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 379 (S.D.N.Y. 1999) (*res judicata* applied because "facts that post-date[d] the prior lawsuits" arose "from the same core of operative facts"), *aff'd*, 207 F.3d 105 (2d Cir. 2000); *Cameron v. Church*, 253 F. Supp. 2d 611, 621 (S.D.N.Y. 2003) (*res judicata* applied where additional facts did not "alter[] the core elements of the conduct complained of").[6]

### III. Plaintiff's Claims Are Untimely.

Plaintiff's timeliness arguments are also meritless. Plaintiff's argument focuses on post-2009 activity. Opp. 10. As discussed above, the Complaint alleges no facts after 2009 (i) triggering a new duty to investigate or (ii) supporting a claim. As to her argument under ERISA's "concealment" exception (ERISA § 413)[7] (Opp. 11), the only affirmative misstatements Plaintiff alleges were made during the 2006 litigation. But "a denial of wrongdoing" in litigation is not "an act of fraud or concealment." *DeFazio v. Hollister, Inc.*, 636

---

[6] Plaintiff also incorrectly argues that *res judicata* is inapplicable because there was "no finding in the 2006 litigation about the insurance problem." Opp. 8. That is a requirement of **collateral estoppel**, not **res judicata**. *See Marvel Characters Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) ("a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes"). Further, *Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015), does not allow Plaintiff to do an end run around her pleaded allegations and *res judicata*. *Tibble* addressed ERISA's statute of repose, and said nothing about a prior judgment and release under *res judicata*. *Tibble* also involved inapposite claims about monitoring publicly available performance and fee data for mutual funds—not the question of when a duty to investigate is triggered as to a publicly traded stock fund.

[7] This exception requires Plaintiff to plead "affirmative" acts intended "to hinder the discovery of a breach." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir. 2001); *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 211 (2d Cir. 2017) (applying exception based on fiduciary's affirmative "misstatements to participants").

5

F. Supp. 2d 1045, 1064 (E.D. Cal. 2009), *aff'd in part*, 612 F. App'x 439 (9th Cir. 2015).

### IV.     Plaintiff's Loyalty Claim Fails (Count II).

Plaintiff ignores ***eight cases*** Defendants cited that dismiss loyalty claims premised on corporate status—including Second Circuit rulings.  Mot. 14-15 & n.10.  Instead, she relies on non-binding cases expressing a minority view that largely predate these binding Second Circuit decisions.  Plaintiff also argues that Defendants "encouraged Plan investment in company stock." Opp. 16.  But there is no factual allegation of encouragement directed to Plan participants, just conclusory rhetoric about a generalized corporate buyback announcement made to the public at large.  Compl. ¶ 106.  Indeed, Plaintiff's contention that Defendants made a "public commitment to reduce the percentage of Plan assets invested in the GE Stock Fund" is inconsistent with her conclusory suggestion of participant-directed encouragement.  Opp. 21.  This case presents precisely the type of loyalty argument that the Second Circuit has repeatedly rejected.  *See* Mot. 14-15 & n.10 (citing cases); *Taveras v. UBS AG*, 513 F. App'x 19, 24-25 (2d Cir. 2013).

### V.      Plaintiff's Prudence Claim Fails (Count I).

#### A.     Plaintiff Ignores the Requisite Context-Specific Analysis.

Plaintiff rejects Defendants' authorities (at Mot. 16-20) that explain the context here—the inherently subjective and fluctuating nature of reserve calculations—contending that those cases are "inappropriate" on a motion to dismiss.  Opp. 16.  She ignores that many of those cases were rulings on ***motions to dismiss***.[8]  Her argument also disregards the Supreme Court mandate that a "careful, context-sensitive scrutiny of a complaint's allegations" is critical in ERISA cases like this one.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  Plaintiff has no

---

[8] *See, e.g., City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48 (S.D.N.Y. 2015); *Levy v. Huszagh*, 2012 WL 4512038 (E.D.N.Y. Sept. 28, 2012); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326 (S.D.N.Y. 2011); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685 (S.D.N.Y. 2004).

answer to these cases, which require her to allege something more than the fact that loss reserves were ultimately increased to give rise to a plausible inference of a knowing under-reservation. Mot. 18-19 & nn.12-13.  She simply contends that the amount of GE's 2018 contribution was significant.  Opp. 16.  Since courts reject arguments based even on a "massive increase" in reserves, her magnitude argument fails.  *In re Wachovia*, 753 F. Supp. 2d at 361 (citation omitted); Mot. 18-19.  Plaintiff's contradictory allegations also defeat her claim.  Plaintiff's argument that Defendants "hid" the purportedly inadequate reserves (Opp. at 16) is contradicted by her acknowledgement that significant capital contributions were publicly disclosed in SEC filings.  Compl. ¶ 81.  And as described above, Plaintiff's remaining allegations relate to conduct predating 2010.  *Supra* § II.

### B. Plaintiff Ignores the Relevant Post-*Dudenhoeffer* Cases.

Defendants identified *twelve* cases that dismissed claims like this one under *Dudenhoeffer*.  Mot. 20-25.  Yet again, the Opposition ignores all twelve, including two Second Circuit cases, *Rinehart* and *Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016).  Instead, citing an outlier case holding that a stock-drop claim was adequately pled—on unique facts—*Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620 (2d Cir. 2018), Plaintiff argues that the GE stock drop was "inevitable."  Opp. 20-21.  Plaintiff is wrong—*Jander* does not save her claims—and notably, the Supreme Court granted certiorari, No. 18-1165, 2019 WL 1100213 (U.S. June 3, 2019), and should hear *Jander* later this year.

*Jander* involved much different facts—an imminent disclosure that was unavoidable because IBM was selling an impaired business unit and therefore "a potential purchaser's due diligence would likely result in discovery of the business's problems."  910 F.3d at 630.  This context was "particularly important" because it meant that "non-disclosure [wa]s no longer a realistic [option]."  *Id.* at 630; *see also O'Day v. Chatila*, __ F. App'x __, 2019 WL 2404660, at

7

*1 (2d Cir. June 7, 2019) (affirming dismissal) (highlighting that *Jander* involved allegations that IBM's impaired business "was ***about to be*** sold." (emphasis added)).  Although plaintiffs often argue that a stock drop is "inevitable,"[9] after *Jander*, a plaintiff must point to at least a "major triggering event" to plead inevitability.  *Fentress v. Exxon Mobil Corp.*, 2019 WL 426147, at *5 (S.D. Tex. Feb. 2, 2019) (dismissing complaint even in the face of a pending SEC investigation).

Plaintiff here alleges ***exactly the opposite***—that (i) GE was ***not*** attempting to sell its business unit and (ii) Defendants purportedly knew of the under-reserving since ***2006***.  Compl. ¶¶ 78, 81.  Moreover, *Jander* involved a business that was "incur[ring] annual losses of $700 million," an objectively known fact that would have to be disclosed during a corporate transaction.  910 F.3d at 623.  Reserve calculations, by contrast, are inherently non-prescient—they involve the creation of ***estimates*** that will invariably change over time, making any suggestion of inevitability (immediate or not) illogical and implausible.  Mot. 16-20.  And contrary to Plaintiff's argument that "[i]nevitably, policyholders would file claims requiring the insurance entities to pay billions of dollars to policyholders that the entities did not have, thus exposing the problem" (Opp. 20), Plaintiff notably does not plead that billions of dollars in insufficiently reserved claims have actually been made; rather, reserves were increased in 2018 to address ***the potential*** for a significant increase in ***future*** long-term care claims over decades to come.  This critical context further underscores why this case is unlike *Jander* and is more like cases in which courts have refused to infer imprudence from allegations giving rise to, at best,

---

[9] *See, e.g.*, *Wilson v. Edison Int'l, Inc.,* 315 F. Supp. 3d 1177, 1193 (C.D. Cal. 2018) ("conclusory allegations . . . about the inevitable harm" are "insufficient"); *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1087 (D. Minn. 2017) ("Plaintiffs may not simply allege that because a stock price drop was inevitable, *ipso facto* almost any legal alternative action aimed at softening losses to participants would do more good than harm.").

8

uncertainty. *See, e.g.*, *In re Wells Fargo ERISA 401(K) Litig.*, 2017 WL 4220439, at *2, *4 (D. Minn. Sept. 21, 2017) (granting dismissal because insider-information claims are often based on "information that is incomplete, imperfect, and fluid"). Based on these facts, this Court should reject Plaintiff's arguments as a dozen other courts have done before, including the Second Circuit on several occasions.

### C. Plaintiff Fails to Identify a Plausible Pleaded Alternative Action.

Plaintiff also contradicts her own implausible assertion that no prudent fiduciary could have concluded that earlier action would have caused a drop in the GE share price. Opp. 17 ("Defendants opted to delay disclosure for as long as possible to reap for themselves the benefits of a higher stock price"). Plaintiff cannot have it both ways—*i.e.,* that Defendants refrained from action to maintain a higher stock price, but that disclosure would not have caused a decline in the share price. Plaintiff further suggests that any detriment to Plan participants resulting from stopping new investments is pure "speculation." Opp. 21. But numerous courts have dismissed claims on this exact basis—which has been recognized as non-speculative by the Supreme Court. *See* Mot. 25 (citing *Dudenhoeffer*).

### D. Plaintiff's Separate Disclosure Theory Does Not Salvage Her Claims.

Finally, Plaintiff argues that *Dudenhoeffer* is inapplicable because she asserts a fiduciary disclosure claim based on Defendants' statements denying liability during the 2006 litigation. Opp. 24-25. But Plaintiff has not asserted a misrepresentation claim, nor has she plausibly alleged any litigation statements were inaccurate. And in any event, litigation statements are not fiduciary representations.

To state a claim for fiduciary misrepresentation, an ERISA plaintiff must demonstrate that statements were "made in an ERISA fiduciary capacity." *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 577-578 (S.D.N.Y. 2011) (statements made in

9

"SEC filings, press releases, or speeches" were not statements "made while 'acting as a fiduciary' for which [defendants] are liable under ERISA") (citing cases).  Similarly, statements made about the resolution of ERISA litigation are not fiduciary in nature:  courts recognize that fiduciaries are not exercising their fiduciary functions when acting in litigation adverse to beneficiaries, who have their own counsel.  *See, e.g.*, *Black v. Bowes*, 2006 WL 3771097, at *1-*3 (S.D.N.Y. Dec. 21, 2006) (discussing the fiduciary exception to attorney-client privilege).  Because fiduciaries face **personal liability** when sued for fiduciary breach, once litigation arises the "interests of the ERISA plan fiduciary and the plan beneficiaries have diverged sufficiently such that the fiduciary . . . is no longer acting directly in the interests of the beneficiaries but in its own interests to defend itself against plan beneficiaries." *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 497 (M.D.N.C. 2008); *see also Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 720 (S.D.N.Y. 2007).

Notably, Plaintiff does not cite a single case holding (or even suggesting in dicta) that litigation statements could be fiduciary communications.  Plaintiff's misrepresentation argument is therefore not actionable under ERISA and does not salvage her claims.

## CONCLUSION

For the reasons stated in Defendants' opening brief, as well as the arguments herein, the Complaint should be dismissed in its entirety and with prejudice.[10]

---

[10] Dismissal with prejudice, rather than granting leave to re-plead, is appropriate because Plaintiff does not seek leave to amend, nor does she identify any new allegations that could somehow salvage her claims, which all fail as a matter of law.

10

| | |
|---|---|
| Dated: June 19, 2019 | Respectfully Submitted, |
| | /s/ James O. Fleckner |
| Andrew C. Rose (Bar Roll No. 102473) | James O. Fleckner, admitted *pro hac vice* |
| NIXON PEABODY LLP | GOODWIN PROCTER LLP |
| 677 Broadway, 10th Floor | 100 Northern Avenue |
| Albany, New York 12207 | Boston, MA 02210 |
| Phone: (518) 427-2650 | Phone: (617) 570-1000 |
| Fax: (518) 427-2666 | Fax: (617) 523-1231 |
| acrose@nixonpeabody.com | jfleckner@goodwinlaw.com |
| | |
| | Jaime A. Santos, admitted *pro hac vice* |
| | Goodwin Procter LLP |
| | 901 New York Avenue |
| | Washington, D.C. 20001 |
| | Phone: (202) 346-4000 |
| | Fax: (202) 346-4444 |
| | jsantos@goodwinlaw.com |
| | |
| | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2019 this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ James O. Fleckner
James O. Fleckner