**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ADELE VARGA,**

                  **Plaintiff,**

                  v.

**GENERAL ELECTRIC COMPANY,
et al.,**

                  **Defendants.**
_____

**1:18-cv-1449
(GLS/DJS)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Crueger Dickinson LLC<br>4532 N. Oakland Ave.<br>Whitefish Bay, WI 53211 | BENJAMIN AARON KAPLAN, ESQ.<br>CHARLES J CRUEGER, ESQ.<br>ERIN K. DICKINSON, ESQ. |
| Simmons Hanly Conroy LLC<br>112 Madison Avenue, 7th Floor<br>New York, NY 10016 | MITCHELL M. BREIT, ESQ. |
| Wagstaff & Cartmell<br>4740 Grand Ave, Suite 300<br>Kansas City, MO 64112 | ERIC D. BARTON, ESQ.<br>JONATHAN KIEFFER, ESQ.<br>TYLER HUDSON, ESQ. |
| **FOR THE DEFENDANTS:** | |
| Bond, Schoeneck & King, PLLC<br>22 Corporate Woods Blvd., Suite 501<br>Albany, NY 12211 | NICHOLAS J. D'AMBROSIO, JR. ESQ.<br>SANJEEVE K. DeSOYZA, ESQ. |
| Goodwin Procter Law Firm<br>1900 N Street, N.W.<br>Washington, DC 20036 | JAIME SANTOS, ESQ. |

100 Northern Avenue  JAMES FLECKNER, ESQ.
Boston, MA 02210

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Adele Varga brings this putative class action against defendants General Electric Co. (GE) and Jeffrey Robert Immelt alleging that defendants violated their fiduciary duties of prudence and loyalty to the participants of the GE Retirement Savings Plan (hereinafter "the Plan"), pursuant to the Employee Retirement Income Security Act (ERISA).[1] (Compl., Dkt. No. 1.)  Pending are defendants' motion to dismiss, and Varga's motion to strike portions of defendants' memorandum of law in reply to her response to the motion to dismiss.  (Dkt. Nos. 39, 47.)  For the reasons that follow, defendants' motion to dismiss is granted, and Varga's motion to strike is denied.

### II. Background

---

[1] *See* 29 U.S.C. §§ 1001-1191c.

A.   **Facts**[2]

Varga is an employee of GE with a 401K retirement account, and is a participant in the Plan, which offered a GE Stock Fund as one of the options in which participants could choose to invest their 401K retirement contributions and any matching funds. (Compl. ¶¶ 2, 13, 117.) The GE Stock Fund, an employee stock option plan (ESOP), invests nearly all of its assets in GE common stock. (*Id.* ¶ 2) Varga bought and held the GE Stock Fund in her retirement account. (*Id.* ¶ 13.)

Varga alleges that GE "improperly manipulated its earnings and inflated its stock price by improperly under reserving for the insurance liabilities of its wholly-owned insurance subsidiaries." (*Id.* ¶ 1.) Varga claims that defendants are "Plan fiduciaries who either knew or should have known that the under reserving . . . had improperly manipulated GE's earnings and inflated the GE common stock and, thus, the price of the GE Stock Fund." (*Id.* ¶ 3.)

This putative class action closely mirrors a 2006 ERISA class action brought by Plan participants. *See Cavalieri v. General Electric*, No.

---

[2] The facts are drawn from Varga's complaint and presented in the light most favorable to her.

06cv315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009). In the 2006 action, Plan participants alleged, among other things, that GE and others "breached their fiduciary duties by continuing to offer the GE Stock Fund as an investment option even though they knew that the value was inflated by GE improperly under reserving for the insurance liabilities by $5 billion to $10 billion." (Compl. ¶ 4.) The defendants denied the allegations and settled the case in 2009. (*Id.* ¶ 5.) GE sent a notice about this settlement to every Plan participant, which included an express denial of the allegations. (*Id.*)

According to Varga, "[o]n January 16, 2018, GE announced that it had under reserved for the insurance liabilities of its two insurance subsidiaries by approximately $15 billion, and that it needed to contribute approximately $15 billion to its insurance subsidiaries." (*Id.* ¶ 8.) This announcement "had a materially negative impact on earnings," and caused the GE common stock to drop. (*Id.* ¶¶ 8, 10.) "Shortly thereafter, GE also announced that the [U.S. Securities and Exchange Commission (SEC)] was investigating the $15 billion shortfall." (*Id.* ¶ 9.)

Varga alleges that defendants knew, or should have known, of the under reserving problem some time after 2010, and long before it was

4

disclosed in 2018, but delayed the "inevitabl[e]" disclosure. (*Id.* ¶¶ 11, 46, 48, 72-78, 82-83.) Disclosure was allegedly "inevitabl[e]" because the insurance subsidiaries would eventually have to pay policyholder claims as they came due. (*Id.* ¶ 82.) But instead of disclosing the problem, defendants "encourage[d]" investment in the GE Stock Fund by announcing a $50 billion stock repurchase plan in 2015. (*Id.* ¶ 106.) GE also filed Annual Statements stating that the insurance entities' assets exceeded their insurance liabilities by $2 billion, and "resisted selling reinsurance assets, even when bankers encouraged them" to do so. (*Id.* ¶¶ 41, 78.)

Meanwhile, defendants directed another GE subsidiary to contribute over $2.6 billion to its insurance entities between 2009 and 2016, because either, or both, of the entities "risked insolvency because they could not meet their reinsurance obligations." (*Id.* ¶¶ 75-76.) Varga alleges that while defendants were "hiding significant liabilities and spending billions of dollars repurchasing shares rather than addressing those liabilities," the stock price continued to rise, (*id.* ¶ 111), and defendants, in turn, financially benefitted, (*id.* ¶¶ 104-15, 138).

In sum, because defendants did nothing to correct their earlier false

5

and misleading statements to Plan participants, and took no other action to protect Plan participants, they breached their fiduciary duties of prudence and loyalty, causing financial harm to the Plan, as well as Varga and other putative class members' retirement benefits. (*Id.* ¶ 12.)

### B. Procedural History

Varga commenced this putative class action on December 14, 2018, alleging that GE violated its fiduciary duties of prudence and loyalty to Varga and other putative class members, under ERISA. (*Id.*) On April 8, 2019, defendants moved to dismiss the complaint. (Dkt. No. 39.) After a response, (Dkt. No. 43), and a reply, (Dkt. No. 46), were filed, Varga moved to strike an argument in defendant's reply brief, claiming that it is new, (Dkt. No. 47), which defendants opposed, (Dkt. No. 48).

## III. Standard of Review

### A. Motion to Strike

"It is well-established that arguments may not be made for the first time in a reply brief." *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298, *aff'd*, 707 F. App'x 724 (2d Cir. 2017) (internal quotation marks, alteration, and citation omitted). As such, "new arguments first raised in reply papers in support of a motion will not be considered." *Id.* (alteration

6

and citation omitted). "However, reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Id.* (internal quotation marks and citations omitted).

**B.    Motion to Dismiss**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Mills-Sanchez v. Research Found. for State Univ. of N.Y.*, 1:18-cv-723, 2019 WL 2549726, at *4-5 (N.D.N.Y. June 20, 2019), *appeal filed*, No. 19-2405 (2d Cir. Aug. 6, 2019).

### IV.  Discussion

**A.    Motion to Strike**

As an initial matter, the court considers Varga's motion to strike an argument raised in defendant's memorandum of law in reply to Varga's memorandum of law in opposition. (Dkt. No. 47.)

Varga, in her opposition memorandum of law, alleges that defendants' purported misrepresentations during the 2006 litigation could "form an independent basis for a claim of breach of fiduciary duties under

7

ERISA." (Dkt. No. 43 at 25.) In reply, defendants address and respond to this argument, asserting that Varga failed to assert a claim for fiduciary misrepresentation, and, in any event, any statements made during the 2006 litigation are not fiduciary representations. (Dkt. No. 46 at 9-10.) Thus, because defendants' arguments are responsive to Varga's memorandum of law in opposition, defendants have not improperly asserted arguments for the first time in their reply. As such, Varga's motion to strike is denied.

**B. Motion to Dismiss**

*1. Duty of Prudence*

Varga alleges that defendants breached the duty of prudence under ERISA. (Compl. ¶¶ 128-34.) "The central purpose of ERISA is to protect beneficiaries of employee benefit plans." *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 63 (2d Cir. 2016) (internal quotation marks and citation omitted). "To further this purpose, ERISA imposes on fiduciaries a duty to act in a prudent manner under the circumstances then prevailing." *Id.* (internal quotation marks and citation omitted). This duty is measured "according to the objective prudent person standard developed in the common law of trusts," and "requires prudence, not prescience." *Id.* at 63-

8

64 (internal quotation marks and citations omitted).

Defendants argue that Varga has not adequately alleged that defendants knew or should have known that GE's insurance subsidiaries under reserved their long-term care liabilities. (Dkt. No. 39, Attach. 1 at 16-20.) Varga purports to support her allegation that defendants knew of the under reserving problem some time after 2010, and long before it was disclosed in 2018, by copying and pasting allegations, and denials, from the 2006 briefing, (Compl. ¶¶ 46-50), citing to a newspaper article, (*id.* ¶ 78), and citing to an investor's comment that "it is hard to imagine that a $15 billion problem materialized in the course of a year," (*id.* ¶ 72).

Varga's conclusory allegations fail to satisfy the *Twombly* and *Iqbal* pleading standards. The court cannot plausibly infer that defendants knew or should have known of the under reserving problem sometime after the 2006 litigation, and before 2018, merely because GE made an announcement of the problem in 2018. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 361 (S.D.N.Y. 2011) ("[T]he fact of a massive increase to loan loss reserves is not, in itself, an indicator that the previous reserve levels were inadequate.") (internal quotation marks and citation omitted). Thus, although, as Varga points out, "an insurer announcing that

9

it underestimated reserves by *over* 50% of what it previously reported is (thankfully) unheard of," (Dkt. No. 43 at 16), without more, this assertion fails to plausibly allege that defendants knew or should have known of the under reserving problem prior to disclosing it in 2018.

Even if Varga had plausibly alleged that defendants knew or should have known that the GE stock was inflated and thus an imprudent investment for Plan participants, Varga has nevertheless failed to satisfy the pleading standards set forth in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). In *Fifth Third*, the Supreme Court explained that a breach of prudence claim against an ESOP fiduciary must overcome certain pleading hurdles. *See id.* at 425-29. Specifically, courts must undertake a "careful, context-sensitive scrutiny of a complaint's allegations" that an ESOP fiduciary acted imprudently by continuing a plan's purchase of company stock. *Id.* at 425. At the pleading stage, a district court is required to consider whether a plaintiff has plausibly alleged an "alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id.* at 428.

Varga contends that defendants had two alternative actions that they could have taken: disclose the problem earlier, or close the GE Stock Fund to additional investment after 2010. (Compl. ¶¶ 61, 63, 96.) Varga claims that either of these options could have been done consistent with the securities laws, and either would have minimized or avoided the alleged financial harm to the Plan. (Dkt. No. 43 at 5.)

Varga's allegation that defendants could have disclosed the under reserve issues earlier fails to satisfy *Fifth Third*'s requirement that a plaintiff must allege that a prudent fiduciary could not have concluded that the alternative action would do more harm than good. 573 U.S. at 428. In advancing her argument, Varga primarily relies on the fact that disclosure of the problem was inevitable, and that a prudent fiduciary in defendants' position would not have concluded that "publicly disclosing negative information sooner rather than later would do more harm than good to the fund." (Dkt. No. 46 at 5.) Varga's support for her claim that disclosure was inevitable is merely that defendants would inevitably have to fund the insurance subsidiaries with the money owed to policyholders, who would eventually file claims. (*Id.* at 20.) This argument rests almost exclusively on *Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620 (2d Cir. 2018), which

11

held that the plaintiffs in that case had adequately alleged a claim for breach of fiduciary duties under ERISA to survive a motion to dismiss.[3] But the Supreme Court vacated and remanded this Second Circuit decision. *See Ret. Plans Comm. of IBM v. Jander*, No. 18-1165, 2020 WL 201024 (U.S. 2020).[4]

In any event, here, there are no such allegations plausibly showing that an earlier disclosure was legally viable or that defendants could have concluded that they would do more harm than good. *See In re JPMorgan Chase & Co. ERISA Litig.*, No. 12 Civ. 04027, 2016 WL 110521, at *4 (S.D.N.Y. Jan. 8, 2016) (rejecting the theory of earlier disclosure on the basis that the longer a fraud continues, the more painful correction will be because "[t]hese assertions are not particular to the facts of this case and could be made by plaintiffs in any case asserting a breach of ERISA's duty of prudence"); *see also Price v. Strianese*, No. 17-CV-652, 2017 WL

---

[3] Notably, in *Jander*, the Second Circuit observed that the fact that the defendant company was about to be sold was a "particularly important" allegation, because "a potential purchaser's due diligence would likely result in discovery of the business's problems," and thus, disclosure of the company's overvaluation was inevitable. 910 F.3d at 630. But here, Varga fails to allege any similar major triggering event that would make GE's eventual disclosure inevitable, and instead relies on, for example, a general allegation that since other insurers with under-funded long-term care liabilities "inevitably" had to disclose their problems, GE would have to as well. (Compl. ¶¶ 82-83; Dkt. No. 43 at 4.)

[4] In accordance with this Memorandum-Decision and Order, the court denies plaintiff's suggestion to wait for the Second Circuit to issue a decision in *Jander* on remand, and open discovery for the purpose of GE producing to Varga those documents that it has already produced in government investigations of GE. (Dkt. No. 53.)

4466614, at *7-8 (S.D.N.Y. 2017) (noting how the fiduciary duty claims that survive the stringent pleading requirements under *Fifth Third*'s standards is an "extremely narrow category"). For these reasons, Varga's argument that defendants could have satisfied their duty of prudence by disclosing the problem earlier fails.

Varga's second proposed alternative—that defendants could have closed the GE Stock Fund to additional investment after 2010—also fails to satisfy *Fifth Third*'s pleading requirements for the same reasons. (Dkt. No. 43 at 19.) Although Varga attempts to argue that "[t]here is no evidence (beyond speculation) that maintaining the GE Stock Fund, but eliminating future investments, would materially impact the publicly-traded price of GE common stock," (*id.* at 21), this allegation is speculation—not a factual allegation—that a prudent fiduciary would have concluded that this alternative would do more harm than good. *See Amgen Inc. v. Harris*, 136 S.Ct. 758, 760 (2016) (noting that, although it may be true that removing a stock fund from the list of investment options may have been an alternative option for the defendants, the facts and allegations supporting that proposition should appear in the complaint). Thus, merely alleging that there is *no* evidence that closing the fund to future investments would have

13

materially impacted the GE stock price, without more, fails to satisfy the *Fifth Third* pleading standards. *See id.* And, to the extent that Varga relies on the argument that disclosure was "inevitable," (Dkt. No. 43 at 21), for the reasons explained above, this argument fails. Accordingly, Varga's breach of the duty of prudence under ERISA claim is dismissed.

2. *Duty of Loyalty*

Varga also alleges that defendants breached the duty of loyalty under ERISA. (Compl. ¶¶ 135-48.) Pursuant to 29 U.S.C. § 1104(a)(1)(A), fiduciaries must act "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

Here, Varga alleges that defendants had a "financial incentive" to encourage Plan participants to contribute to the GE Stock Fund because defendants benefitted from an inflated GE stock price, and thus, were acting to further their own interests, rather than the interests of the Plan participants. (Compl. ¶¶ 104-16, 138.) Defendants argue that Varga's loyalty claim fails as a matter of law because it rests solely on defendants' financial interest in GE's stock price. (Dkt. No. 39, Attach. 1 at 14-15.)

14

The court agrees. As explained by the Second Circuit:

> Plaintiffs do not allege any specific facts suggesting that defendants' investments in [company] stock prompted them to act against the interests of Plan participants. Under plaintiffs reasoning, almost no corporate manager could ever serve as a fiduciary of his company's Plan. There simply is no evidence that Congress intended such a severe interpretation of the duty of loyalty.

*In re Citigroup ERISA Litig.*, 662 F.3d 128, 145-46 (2d Cir. 2011), *abrogated on other grounds by Fifth Third*, 573 U.S. at 429.

Additionally, although Varga attempts to illustrate that "[t]he numbers bear . . . out" that defendant Immelt was "financially conflicted" because his compensation was tied to GE's stock price, (Compl. ¶¶ 107-15), the court "agree[s] with the many courts that have refused to hold that a conflict of interest claim can be based solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock." *In re Citigroup ERISA Litig.*, 662 F.3d at 146. As such, Varga has failed to "allege[] facts that raise a plausible inference that the interests of the fiduciaries were antagonistic to those of the Plan, or that any defendant was enriched at the expense of the Plan or its participants." *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d 101, 115 (S.D.N.Y. 2018), *aff'd sub nom. O'Day v. Chatila*,

15

774 F. App'x 708 (2d Cir. 2019). Accordingly, Varga's breach of the duty of loyalty under ERISA claim is dismissed as well.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 39) is **GRANTED**; and it is further

**ORDERED** that Varga's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Varga's motion to strike (Dkt. No. 47) is **DENIED**; and it is further

**ORDERED** that Varga's request to wait for the Second Circuit to issue a decision in *Jander* on remand, and to open discovery for the purpose of GE producing to Varga those documents that it has already produced pursuant to government investigations of GE, (Dkt. No. 53), is **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 5, 2020
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge